**CITY OF LOWER BURRELL,**
Appellant,

v.

**CITY OF LOWER BURRELL WAGE
AND POLICY COMMITTEE.**

Commonwealth Court of Pennsylvania.

Argued Oct. 11, 2001.
March 8, 2002.

Richard D. Miller, Pittsburgh, for appellant.

Christine S. McCrady, Arnold, for appellee.

Before McGINLEY, J., SMITH–RIBNER, J., and FLAHERTY, Senior Judge.

OPINION BY Judge McGINLEY.

The City of Lower Burrell (City) appeals[1] the order of the Court of Common Pleas of Westmoreland County (common pleas court) that affirmed the decision of the arbitrator who awarded Lt. Carl H. Baker (Lt.Baker) one hundred compensatory days at a value of eight straight time hours per day, ordered the City to pay Lt. Baker for the one hundred days at his 1993 straight time rate for eight hours for each of the one hundred days minus the appropriate pension contribution, ordered that this payment be considered as part of Lt. Baker's total earnings for 1999 for the purpose of calculating Lt. Baker's pension benefits, and ordered that the City pay Lt. Baker a revised pension benefit retroactive to January 1, 2000.[2]

---

1. This case was reassigned to the author on January 8, 2002.

2. Before this Court the City does not contest the portion of the arbitrator's award of one hundred days pay to Lt. Baker.

### The 1992–93 Award

In 1992, the City's workers' compensation carrier urged adoption of a light duty plan and recommended that Lt. Baker (then Sergeant Baker) and another officer, who had been receiving benefits due to work-related knee injuries under the "Heart and Lung Act," Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637–638, return to work in a light duty capacity. Lt. Baker returned to light duty work, answered the phone, took messages, typed, filed, and prepared reports, as of December 15, 1992. The City of Lower Burrell Wage and Policy Committee (Committee), the collective bargaining representative of the City's police officers, filed a grievance on the basis that the collective bargaining agreement (C.B.A.) did not provide for a light duty assignment, and in past practice there never had been any light duty assignments. The grievance was eventually arbitrated.

At issue originally, in 1992, had been whether the City violated Paragraph 16 of the C.B.A. which provided "[a]ny fringe benefits, including pension benefits now provided by the City, as well as any conditions of work, or any term of employment not specifically mentioned herein, shall be continued." C.B.A., Paragraph 16; Reproduced Record (R.R.) at 13a. Back then the arbitrator determined that for thirty-three years an officer who had received Heart and Lung Act benefits was entitled to continue to receive such benefits until the disability ceased and he returned to full duty. The arbitrator determined that the City's unilateral order that Lt. Baker return to less than full duty work, while his disability continued, deprived him of "this established term and condition of em-

ployment without the requisite agreement of the Union in derogation of Paragraph 16." Arbitrator's Decision, June 7, 1993, at 13; R.R. at 16a.

On June 7, 1993, the arbitrator sustained the grievance and entered a cease and desist order for the term of the 1992–93 C.B.A. that foreclosed the City from scheduling light duty work for officers who had been receiving Heart and Lung Act benefits for a work-related, temporarily incapacitating injury. Lt. Baker and the other officer were awarded one compensatory day off for each day they worked light duty. Lt. Baker received one hundred thirteen days of compensatory time.[3] He used thirteen days in 1993, which left him with one hundred days. Article 2(B)(ii) of the C.B.A. provided that the City shall pay any accumulated compensatory time that a police officer holds on November 30 of each year in the first scheduled pay of December of that year.

Despite the unappealed award the City did not pay Lt. Baker for the one hundred days of accumulated compensatory time in 1993 or in any subsequent year.

### The 2000 Arbitration Award Now on Appeal

In August 1999, Lt. Baker retired effective December 31, 1999. By memorandum to Chief William Newell (Chief Newell) dated August 20, 1999, Lt. Baker informed the City that based on the June 1993 arbitration award the City owed him 1,356 hours of compensatory time which was calculated by multiplying 113 days by twelve hours per day as per the C.B.A. On August 24, 1999, Chief Newell responded that his records reflected Lt. Baker had a balance of 100 compensatory days and that

---

**3.** Article 2(B) of the C.B.A. provided that police officers could elect to be paid for overtime (more than eight hours per day or forty hours per week) at one and one-half times the straight hourly rate or to receive time off in the form of compensatory time at one and one-half times the straight hourly rate.

according to the arbitration award he was to receive eight (rather than twelve) hours per day credit for a total of eight hundred hours. In a memorandum dated September 28, 1999, Lt. Baker requested that City Clerk Edward Kirkwood (Kirkwood) compute his pension. By memorandum dated October 8, 1999, Kirkwood opined to Lt. Baker that the 100 compensatory days awarded to Lt. Baker were not to be included in his pension benefit calculation.

On October 12, 1999, the Committee filed a grievance on behalf of Lt. Baker and asserted that the compensatory one hundred days that had been awarded in June 1993, had to be calculated at the time and a half rate and the compensatory time had to be included in Lt. Baker's pension calculation. The grievance was submitted to arbitration.

The arbitrator determined that Lt. Baker was entitled to payment for one hundred compensatory days at his 1993 straight time rate, for eight hours per day minus his pension contribution. The arbitrator concluded:

> [T]he intent of the Award would be to include the compensatory time in Lieutenant Baker's pension calculations. Roberts' Dictionary of Industrial Relations, Fourth Edition, defines 'compensatory time off' as: 'Special time allowed to employees in lieu of overtime pay, or for extra time put in by the employee for which no overtime can be paid.' The first definition reflects the traditional compensatory time set forth in Article 2(A) and (B) for which overtime would otherwise be paid. The compensatory time awarded to Lieutenant Baker in 1993 was in the nature of the second definition: it was for the extra time he worked on light duty at straight time (overtime not being appropriate), while he should have been off-duty receiving Heart and Lung benefits.

The parties consider compensatory time as time worked. Because the compensatory time was granted to Lieutenant Baker through an Award, it is not the usual type of compensatory time held by an officer pursuant to Article 2. But Lieutenant Baker's 100 days of awarded compensatory time actually fits within the literal language of Article 2(B)(ii): '*Any* accumulated compensatory time held by a police officer as of November 30 of each calendar year shall be paid for by the City in the first pay of December of each calendar year.' (emphasis supplied). *As the parties stipulated that compensatory time received by officers due to working overtime, which is paid at the end of each work year pursuant to Article 2(B)(ii), is considered part of 'total earnings' under Article 20, and is used in calculating an officer's pension benefit, the 100 days should have been included in the pension benefit calculation set forth in Union Exhibit 5.*

Pension contributions are taken out of the compensatory time payment made to an officer in December pursuant to Articles 2(B)(ii). Such contributions should be taken out of Lieutenant Baker's payment for the 100 days, and this underlies the reason why the payment should be used in calculating his pension benefit.

This is consistent with the holdings of the Pennsylvania Supreme Court in *Palyok v. Borough of West Mifflin,* [526 Pa. 324,] 586 A.2d 366 (1991) and *Borough of Nazareth v. Nazareth Borough Police Association,* [545 Pa. 85,] 680 A.2d 830 (1996).

. . . .

*It is respectfully submitted that the holdings of the Supreme Court in Nazareth and Palyok prevail over the dictum of the Commonwealth Court in Czekanski v. Ford City Borough,* 148 Pa.

Cmwlth. 417, 611 A.2d 791 (1992). ... In this case, Lieutenant Baker 'earned' the compensatory time in 1992/93, and it should have been paid to him in December 1993. However, in the Employer's estimation, payment for the compensatory time was not appropriate in 1993 or thereafter.

In accordance with the literal language of Article 2(B)(ii), payment for the 100 compensatory days should now be made to Lieutenant Baker. As the Employer has deducted pension contributions from bargaining unit members' December compensatory time payments under Articles 2(B)(ii) and 20, pension contributions should be deducted from this payment to Lieutenant Baker.... Lieutenant Baker's payment ....which is subject to the deduction, should also be part of his pension calculation. (Footnote omitted). (Emphasis added).

Arbitrator's Decision, June 6, 2000, at 7–9; R.R. at 94a–96a.

The City petitioned to vacate or to modify the award. The City alleged that the arbitrator's award, unless corrected, forced it to perform an illegal act. The common pleas court rejected the City's position and determined:

By choosing not to [pay the compensatory time in 1993] the City exposed itself to the interpretation of its collective bargaining agreement by an arbitrator. The arbitrator's award merely forces the City to include the compensatory time earned in 1993 into the 1999 wage calculations because the City chose not to pay the same. The method used to calculate the pension is not illegal.

Common Pleas Court Opinion (Opinion), February 8, 2001, at 8; R.R. at 135a.

 The City contends that the common pleas court committed an error of law.[4] The City asserts that to follow the arbitrator's order, and include the 100 days of compensatory time awarded in 1993 to calculate Lt. Baker's monthly pay in 1999, violated Section 141.06 of the City Ordinance[5] and Section 4303(a) of the Third Class City Code[6] (which Section 141.06 of the City Ordinance tracks), because there is nothing in Section 141.06 of the City Ordinance that authorized compensatory time earned in 1993 to be carried forward to 1999. To do so unjustifiably inflated or "spiked" the pension calculation, asserts the City. The City makes this assertion because Section 141.06 of the City Ordinance provides that a police officer's pension is calculated

---

4. Our review of Act 111 grievance arbitration is narrow *certiorari*. *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt)*, 540 Pa. 66, 656 A.2d 83 (1995). The narrow *certiorari* review limits this Court to reviewing questions concerning: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights. Regarding an excess of the arbitrator's powers, our Pennsylvania Supreme Court held in *Betancourt* that an arbitrator's powers are limited: "he or she may not mandate that an illegal act be carried out; he or she may only require a public employer to do that which the employer could do voluntarily." *Id.* at 79–80, 656 A.2d at 90. Also, the arbitration award must encompass only terms and conditions of employment and

may not address issues beyond that area, and "[a]n error of law alone will not warrant reversal under the narrow *certiorari* scope of review." *Id.* at 80, 656 A.2d at 90,.

5. Section 141.06(d) provides in pertinent part:

[T]he basis of the apportionment of the pension shall be determined by the rate of the monthly pay of the member at the time of his retirement or the highest average annual salary which the member received during any five years of service preceding retirement, whichever is higher....

6. Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. § 39303(a).

based on the monthly rate of pay for the officer in his last year of employment or the highest average annual salary which the officer received during any five years of service preceding retirement whichever is higher. Because the arbitrator included the payment for the compensatory time as part of Lt. Baker's 1999 salary, Lt. Baker would then have a much higher salary in his last year of employment than he would otherwise.

We note that *Palyok v. Borough of West Mifflin*, 526 Pa. 324, 586 A.2d 366 (1991), and *Borough of Nazareth v. Nazareth Borough Police Association*, 545 Pa. 85, 680 A.2d 830 (1996) differ factually from the present case. In *Palyok*, our Pennsylvania Supreme Court determined that the word "salary" in Section 5 of the Act, commonly referred to as the Police Pension Fund Act (Act), Act of May 29, 1956, P.L. (1955) 1804, *as amended*, 53 P.S. § 771, as used in the Act for the purpose of determining monthly pension benefits included basic salary and overtime pay and extra work pay. The Pennsylvania Supreme Court reached this decision because the police officer had performed the same type of work when he was paid for overtime and extra work as he did when he received his regular pay and, also, because the Borough of West Mifflin deducted retirement fund contributions from the overtime pay and the extra work pay. *Palyok*, 526 Pa. at 328, 586 A.2d at 368.

In *Borough of Nazareth v. Nazareth Borough Police Association*, 545 Pa. 85, 680 A.2d 830 (1996), an arbitrator issued an award which provided that the pension benefit for a member of the Nazareth Borough Police Association was to be based upon gross earnings as set forth on the W 2 form. The Borough of Nazareth appealed to the Court of Common Pleas of Northampton County and challenged the legality of the award. The trial court af-

firmed. This Court also affirmed. *Nazareth*, 545 Pa. at 88–89, 680 A.2d at 832. Our Pennsylvania Supreme Court affirmed as well and held that the Borough of Nazareth did not prove that the arbitrator ordered the commission of an illegal act. *Nazareth*, 545 Pa. at 93–94, 680 A.2d at 834.

The City asserts that rather than *Palyok* and *Nazareth* the arbitrator erred by not following *Czekanski v. Ford City Borough*, 148 Pa.Cmwlth. 417, 611 A.2d 791 (1992). In *Czekanski*, John F. Czekanski, a police officer for Ford City Borough (Borough), had been forced to retire. The Pennsylvania Human Relations Commission reinstated Czekanski and awarded him back pay in the amount of $31,978.37. When Czekanski voluntarily retired from the police force, his pension calculation did not include the amount of the award. Czekanski filed a grievance with the Grievance Committee of the Borough Police and contended that because the amount of his back pay was reflected on his W-2, and was within the thirty-six months immediately preceding his retirement that amount had to be included in his pension calculation. Czekanski asserted that he was entitled to an increase in his pension of $447.14 per month. The Committee found his claims to be without merit and his grievances never reached binding arbitration. In the Common Pleas Court of Armstrong County, Czekanski petitioned for review in the nature of a declaratory judgment and alleged that the Borough improperly calculated his pension benefits. The Borough preliminarily objected on the basis that Czekanski was bound by the collective bargaining agreement which detailed the grievance procedures to be followed and that Czekanski's petition had to be dismissed. The Court of Common Pleas of Armstrong County dismissed the petition. This Court affirmed on the basis that the common pleas court did not have

jurisdiction. *Czekanski*, 611 A.2d at 791–792.

■ However, in dicta [7], this Court stated that because the back pay was not earned within thirty-six months preceding his retirement it should not be part of Czekanski's pension calculation:

> While Czekanski *received* the back pay settlement within the 36 months immediately preceding his retirement, this amount was not *earned* within the 36 months immediately preceding his retirement. The back pay amount represents regular salary and other compensation which Czekanski would have otherwise earned during the period of his involuntary retirement from October 1, 1982 to April 16, 1984. Because the back pay amount is therefore not a part of Czekanski's monthly average salary during the 36 months immediately preceding his retirement from the Borough police force, the Borough's method of calculating Czekanski's pension benefits was in accordance with Ordinance Nos. 378 and 527 and the back pay amount was properly excluded from computation. (Emphasis in original).

*Czekanski*, 611 A.2d at 793.

*Czekanski* is not controlling for two reasons. First, as dicta, it is not binding precedent. Second, *Czekanski* was not a challenge to an arbitrator's award. Therefore, this Court's scope of review was not limited to the *Betancourt* narrow *certiorari* review. Instead, the Court's scrutiny was limited to whether there was a violation of constitutional rights, a violation of agency procedures, an error of law, and whether the decision was supported by substantial evidence. Our review, as to whether the arbitrator ordered the commission of an illegal act under *Betancourt*, is much more restricted.

For example, in *Pennsylvania State Police v. Pennsylvania State Troopers Association (Trooper Smith)*, 559 Pa. 586, 741 A.2d 1248 (1999), an off duty Trooper, Trooper Rodney Smith (Trooper Smith) had spotted an ex-girlfriend, Tammy Mathis (Mathis), parked on the side of the road. Trooper Smith drove over and argued with Mathis about money he maintained she allegedly owed him. As the argument escalated, Trooper Smith jammed his police issued weapon into Mathis's mouth and threatened to kill her. Trooper Smith was arrested and charged with three counts of driving under the influence, one count of simple assault, and one count of making terroristic threats. He pled guilty to all charges. As a result, the Pennsylvania State Police dismissed him. Trooper Smith filed a grievance and alleged that his dismissal was improper. The arbitrator ruled that though Trooper Smith committed the acts in question, the dismissal was excessive and reinstated him without back pay. Under the narrow *certiorari* scope of review of *Betancourt*, this Court and our Pennsylvania Supreme Court affirmed.

In the present controversy, the parties stipulated that the compensatory time paid to officers at the end of each work year pursuant to Article 2(B)(ii) of the C.B.A. is considered part of "total earnings" under Article 20 of the C.B.A. and is properly used to calculate an officer's pension benefit. Therefore, based upon the stipulation, the City would agree, theoretically, that if

7. Judicial dictum has been defined as "[a]n opinion by a court on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision." BLACK's LAW DICTIONARY 465 (7th ed.1999). Dicta has no precedential value. *See Northeastern Gas Co. v. Karpowich*, 656 A.2d 590 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 542 Pa. 652, 666 A.2d 1060 (1995).

the compensatory time owed to Lt. Baker had been paid to him in 1993, the year he earned it, the payment would be properly included in his pension calculation, provided he had retired within five years. This Court concludes the City has acknowledged by this stipulation that such an inclusion in the pension calculation is not an illegal act. Therefore, the City's only challenge is to the time of receipt versus when the pay was earned or awarded, one of form not substance.

Regardless, given the narrow scope of review, this Court agrees with the common pleas court's determination that "[t]he arbitrator's award merely forces the City to include the compensatory time earned in 1993 into the 1999 wage calculations because the City chose not to pay the same. The method used to calculate the pension is not illegal." Opinion at 8; R.R. at 135a. At most, the arbitrator committed an error of law when he included the payment of the compensatory time as part of Lt. Baker's 1999 salary for purposes of his pension calculation.

Accordingly, we affirm.

### ORDER

AND NOW, this 8th day of March, 2002, the order of the Court of Common Pleas of Westmoreland County in the above-captioned matter is affirmed.

DISSENTING OPINION BY Judge SMITH–RIBNER.

I respectfully dissent from the majority's conclusion that this Court must affirm the decision of the Court of Common Pleas of Westmoreland County that declined to set aside an arbitrator's award that required the City of Lower Burrell (City) to calculate a retiring police officer's pension benefit in a manner that violates the twin provisions of the City's ordinance and of the applicable statute. In my view the

reasoning of the Court in the factually very similar case of *Czekanski v. Ford City Borough,* 148 Pa.Cmwlth. 417, 611 A.2d 791 (Pa.Cmwlth.1992), should be adopted and applied in the present matter.

As the majority acknowledges, in *Czekanski* a police officer who was retiring in 1988 received backpay pursuant to a 1985 award compensating him for a period of forced retirement that he successfully challenged. The borough refused to include the backpay award in the officer's pension calculation, and his union declined to take the matter to arbitration. The officer filed a petition for declaratory judgment in the court of common pleas, and the court sustained a preliminary objection and dismissed the case for lack of jurisdiction. This Court affirmed the trial court's dismissal and also stated that, even though the officer received his backpay award during the applicable averaging period under the ordinance of the final thirty-six months of his employment, the award represented income that was earned outside that period, and the borough properly excluded it. The majority declines to follow the reasoning of *Czekanski* because the statement there concerning the propriety of excluding the backpay award in the pension calculation was dictum and because the present review is pursuant to the narrow certiorari scope of review applicable to cases involving the Act commonly known as "Act 111," Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1—217.10.

I agree that *Czekanski* was decided on the procedural issue of the correctness of the trial court's dismissal for lack of jurisdiction. Nevertheless, the reasoning in *Czekanski* concerning treatment of the backpay award remains cogent and persuasive. As the majority notes, the local provision at issue here, City Ordinance Section 141.06(d), provides that for an eligible officer "the basis of the apportion-

ment of the pension shall be determined by the rate of the monthly pay of the member at the time of retirement or the highest average annual salary which the member received during any five years of service before retirement, whichever is the higher," and this provision tracks the language of the applicable statute, Section 4303(a) of The Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. § 39303(a).

In this case the City used the figure representing "the rate of monthly pay of the member at the time of retirement," which it calculated according to its practice described by the City of Lower Burrell Wage and Policy Committee of determining the monthly pay at the time of retirement by dividing the member's "Form W–2" earnings for the previous year by twelve. Although Lieutenant Baker received payment for the previously awarded 100 days of compensatory time near the time of his retirement, this amount plainly had nothing to do with "the rate of monthly pay of the member at the time of retirement," whether determined by the City's unchallenged averaging practice or by looking at Lieutenant Baker's literal final monthly rate of pay. In addition, the compensatory time payment was compensation earned outside the period of "any five years of service preceding retirement" specified in the Ordinance and in The Third Class City Code, and the payment equally had nothing whatsoever to do with "the highest average annual salary" that the officer received during the five-year averaging period.

I agree that if the award related to compensation earned during the averaging period, it should be considered. But there is no question that in this case it did not. The majority refers to this as a distinction of form rather than substance, but I believe that the legislature and the City es-

tablished a very clear substantive requirement in regard to pension calculation. Wages that an officer received outside the averaging period are not considered, even though deductions were made from them. An award relating to compensatory time earned outside the averaging period may not be considered without violating the plain language of the Ordinance and the statute.

Nevertheless, the majority concludes that the Court must affirm because its review is restricted to narrow certiorari, which limits a reviewing court to considering questions concerning: "(1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights," under *Pennsylvania State Police v. Pennsylvania State Troopers' Ass'n (Betancourt),* 540 Pa. 66, 79, 656 A.2d 83, 90 (1995). This case involves the third consideration, namely, whether there was an excess of the arbitrator's authority. The majority points out that in the case of *Pennsylvania State Police v. Pennsylvania State Troopers Ass'n (Smith),* 559 Pa. 586, 741 A.2d 1248 (1999), the Supreme Court affirmed a determination that arbitrators' decisions reinstating two State Police Troopers despite egregious misconduct could not be disturbed under narrow certiorari review. I note, however, that *Smith* is distinguishable from the present case in one crucial respect, even though the Supreme Court there upheld reinstatements that it implicitly characterized as "extremely distasteful." *Smith,* 559 Pa. at 590 n. 3, 741 A.2d at 1251 n 3.

One of the cases decided in *Smith* involved an off-duty trooper who assaulted a former girlfriend, threatening her with his service weapon, and who pleaded guilty to simple assault and making terroristic threats. The other case involved an off-duty trooper who left a department store

with goods worth $27.58 for which he had not paid, and a charge for a summary offense of retail theft was withdrawn upon his agreement to pay $177 as restitution and a civil recovery penalty. After discussing the holding and the rationale of *Betancourt*, the Supreme Court held that the arbitrators in *Smith* did not exceed their powers. The court expressly noted that, although members of municipal police departments are dismissed from service when they have been convicted of a felony or a misdemeanor, 53 Pa.C.S. § 2164, there was apparently no similar proscription applicable to State Troopers. *Smith*, 559 Pa. at 593 n. 6, 741 A.2d at 1252 n. 6. Therefore, the arbitrators' directions to reinstate the troopers did not require the State Police to violate a statute.

In *Smith* the Supreme Court referred to the discussion of the "excess of an arbitrator's powers" prong of narrow certiorari review in *Betancourt*. The court noted that it had held that " '[a]n arbitrator's powers are limited. He or she may not mandate that an illegal act be carried out; he or she may only require a public employer to do that which the employer could do voluntarily.' " *Smith*, 559 Pa. at 592–593, 741 A.2d at 1252 (quoting *Betancourt*, 540 Pa. at 79, 656 A.2d at 90). There is a degree of tension between this principle and the proposition, also stated in *Betancourt* and repeated in *Smith*, that a mere error of law would be insufficient to support a court's decision to reverse an Act 111 arbitrator's award. Nevertheless, in the present case the arbitrator's award requires the City to do that which it could not do voluntarily, namely, to include in the pension calculation wages that do not represent final monthly pay or an average annual pay from a period within five years of retirement. In my view the arbitrator exceeded his powers when he directed this violation of the Ordinance and the statute,

and his award should be set aside on that point.