Ronald **GONTARCHICK**, Susan Ann Gontarchick, his wife; Marlin Reed, Mary Jane Reed, his wife; and Matthew Reed, their son

v.

**CITY OF POTTSVILLE, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2008.

Decided Dec. 12, 2008.

James D. Young, Harrisburg, for appellant.

Anthony M. Caputo, Harrisburg, for appellees.

BEFORE: SMITH–RIBNER, Judge, SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

The City of Pottsville (City) appeals from the January 4, 2008 order of the Court of Common Pleas of Schuylkill County that granted the motion for summary judgment filed by Ronald and Susan Gontarchick and Marlin, Mary Ann and Matthew Reed (collectively, Appellees), and denied the City's cross-motion for

summary judgment. This case presents an issue of first impression concerning the calculation of pension benefits for retired police officers pursuant to Section 4303 of The Third Class City Code (Code), Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. § 39303, and Pottsville City Ordinance No. 525, § 46–10(B). The question involved as stated by the City is whether the trial court committed an error of law in holding that Appellees' pension benefits provided for under the Code and under the City's Ordinance may be calculated based on the amount of the retired officers' last month's salary prior to retirement as opposed to being calculated based on an average of the preceding twelve months of salary before retirement.

I

Section 4301 of the Code, 53 P.S. § 39301, provides that cities shall by ordinance establish a police pension fund that must be maintained by an equal and proportionate monthly charge against each member of the police force. Section 4303(a), 53 P.S. § 39303(a), directs that police pensions be calculated as follows:

The basis of the apportionment of the pension shall be determined by the rate of the monthly pay of the member at the date of ... retirement, or the highest average annual salary which the member received during any five years of service preceding ... retirement, whichever is the higher, and except as to service increments provided for in subsection (b) of this section, shall not in any case exceed in any year one-half the annual pay of such member computed at such monthly or average annual rate, whichever is the higher.

In accordance with the foregoing provision, the City adopted Ordinance No. 525, which provides the following at Section 46–10(B):

The amount of pension shall be 1/2 of the monthly salary of the member at the date of retirement or 1/2 of the highest average annual salary which the member received during any five years of service next preceding the date of retirement, whichever is the higher, and except as to service increments hereinafter provided. For purposes of calculating the monthly or average annual salary of the member, the following definitions and rules shall, in addition to any applicable provisions of the Third Class City Code, apply:

(1) Salary shall include overtime and accumulated compensatory time which shall be allocated to the year or years in which such compensatory time was earned by the member.

(2) Salary shall not include payments for sick time buy-back and/or unused sick and vacation time.

The parties stipulated to the pertinent facts and filed in the trial court a statement of undisputed material facts. *See* City's Motion for Summary Judgment, Ex. A; Reproduced Record (R.R.) at 26a.

Appellee Ronald Gontarchick (Gontarchick) was hired by the City as a full-time police officer on August 28, 1971 and retired as a captain on March 12, 2003 after completing over thirty-one years and six months of service. Appellee Marlin Reed (Reed) was hired as a full-time police officer on January 9, 1975 and retired as a corporal on March 28, 2003 after completing over twenty-eight years and two months of service. Having met the age and service requirements, Gontarchick and Reed qualified for superannuation retirement under the Code. On March 11, 2003, Gontarchick submitted a demand to the City for pension benefits based on his monthly salary, clothing allowance, compensatory time, overtime pay and service

increment. Reed submitted his demand on March 29, 2003.

The City Pension Board calculated Appellees' pension benefits in accordance with its custom and past practice of using the "rate of the monthly pay" method based on the average of the employees' last twelve months of salary before their retirement.[1] The pensions were approved, and Appellees currently receive benefits based on the City's calculations. Appellees filed their lawsuit [2] seeking a recalculation of benefits based upon their last month's salary, including clothing allowance, compensatory time, overtime pay and service increments. Using their calculation, Appellees' pensions would be higher than what they currently receive.

In ruling on the summary judgment motions, the trial court disagreed with the City's interpretation of the Code and its Ordinance and reasoned in part:

> Assuming the City's argument is correct, the employer would be duplicating the methods of calculation, by creating an unnecessary calculation using the last year's salary as a basis in the first method and then including that same amount in the calculation of the second method. Whichever method is used is going to

produce an amount equal to the last year's salary because that is presumably the higher amount.

Trial Court Opinion at 5. The trial court noted that "if the legislature had intended to use the average of the last twelve months' salaries, they would have specifically stated so as they did with the second method." *Id.* It concluded that under the Code the benefits should be based on the last month's salary immediately prior to retirement or on the average of the last five years' salaries, whichever is higher.[3]

The City argues that Appellees have insisted upon an interpretation of the "rate of the monthly pay" as meaning the actual income and salary during the final thirty days of their employment because each of them worked extra hours and earned an unusually large amount of overtime during the final month. The City points out that a "rate" contemplates an average based upon some comparison. In support, it notes that a rate is defined in Black's Law Dictionary 1261 (6th ed.1990) as: "Proportional or relative value, measure or degree. The proportion or standard by which quantity or value is adjusted." The City therefore proposes that some type of average or calculation was intended by the

---

1. The City attached to its motion for summary judgment an Exhibit B consisting of the Unsworn Declaration of Julia Rescorla, the City Clerk and pension administrator. R.R. at 35a. The Declaration states that pension benefits have historically been calculated pursuant to the City's Ordinance using the "rate of monthly pay" calculation "by averaging the employee's most recent twelve months' earnings at the time of retirement." Declaration ¶¶ 3, 6; R.R. at 35a.

2. Appellees filed suit in Schuylkill County claiming that the City violated their civil rights under 42 U.S.C. § 1983 by depriving them of pension benefits without due process and asking for a declaratory judgment and an order in mandamus. The City removed the case to federal court, which abstained after

determining that a state court should interpret relevant statutory provisions. *Gontarchick v. City of Pottsville* (M.D. Pa., No. 3:03–CV–1158, filed December 10, 2003).

3. This Court's review of an order granting summary judgment is plenary. *O'Donoghue v. Laurel Savings Ass'n*, 556 Pa. 349, 728 A.2d 914 (1999). Summary judgment may be granted only when the facts demonstrate clearly that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* The standard of review is whether the trial court committed an error of law or abused its discretion. *Mountain Village v. Board of Supervisors of Longswamp Township*, 582 Pa. 605, 874 A.2d 1 (2005).

legislature, and, moreover, that had it intended for pensions to be based on the final month's salary it would have used specific words to that effect.

The City asserts that its customary calculation method represents a reasonable and appropriate interpretation of the Code and that it is supported by two decisions of this Court. The City points first to *Kosey v. City of Washington Police Pension Board,* 73 Pa.Cmwlth. 564, 459 A.2d 432 (1983), where the issue was whether a lump-sum payment for unused vacation time to a retiring police officer should be included in the amount on which the pension benefits were based. The Court illustrated the method of calculation, which involved taking the salary for the preceding year plus the service increment, dividing that by 50 percent (as per the Code and ordinance) and further dividing by twelve to get the monthly payment. The plaintiff did not advocate a different method of calculation; he only demanded that his payment for unused vacation be added to the salary amount. The Court held that payment for unused vacation should not be included, reasoning that neither the City Council nor the legislature intended for certain retirees to receive a windfall in pension benefits merely because their municipality chose to pay for unused vacation rather than to force them to take the time off before retiring.

The City also points to *City of Lower Burrell v. City of Lower Burrell Wage & Policy Committee,* 795 A.2d 432 (Pa. Cmwlth.2002), involving whether compensatory time that had been awarded in 1993 but never paid was properly included in the calculation of pension benefits for a police officer retiring in 1999. The dissenting opinion noted that the unchallenged practice of the city had been to arrive at the "rate of monthly pay of the member at the time of retirement" by dividing the member's Form W–2 earnings for the previous year by twelve. *Id.* at 439. Both cases involved questions as to the amounts to be included in the overall calculation of benefits but not the specific method used. The City recognizes this distinction, but it notes that the methodology used in the cases was not criticized by the Court and that it reflects a proper and appropriate interpretation of the Code.

On a final point, the City submits that its calculation method avoids artificially inflated pensions resulting from employee efforts to "pad" their earnings by working excessive overtime hours immediately prior to retirement. Conversely, the City's method would avoid artificially low pensions when circumstances force an employee to take unpaid leave during the final month before retirement. Moreover, the City's method prevents disparate treatment among employees that might result from an inequitable assignment of overtime to those about to retire, and it allows for predictability in the management of pension funds by enabling administrators to ascertain approximate pension amounts prior to actual retirement.

Appellees argue that pursuant to the Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501–1991, the Court must interpret the language of a statute according to its ordinary usage and plain meaning. They contend that there can be only one interpretation of the Code language relating to the calculation of pension benefits. The Code provides that one of two options must be used: either the "rate of the monthly pay of the member at the date of ... retirement" or the "highest average annual salary which the member received during any five years of service preceding ... retirement...." Section 4303(a) of the Code. The first method must be based on the income of the officer in the last month of employment, and the second must be

based on a five-year average. The selection of method is not discretionary because the employer must use the method that yields the higher monthly benefit. It is uncontroverted that Appellees have proposed a method of calculation that provides a higher monthly benefit than what they currently receive.

Appellees argue further that the City cannot rely on its interpretation or past practice for determining the calculation method because if the Ordinance prohibits calculation based on the monthly method, then it would be in conflict with its enabling statute and thus void. They cite *Allentown School District Mercantile Tax Case*, 370 Pa. 161, 87 A.2d 480 (1952) (municipalities have no original power of legislation so an ordinance that is unauthorized or that conflicts with its enabling statute is void) in support of this position. Appellees point out that each side advocates a different rate of pay with the dispute centering on the time period to be used, *i.e.*, Appellees advocate a one-month period or final month of pay while the City advocates a twelve months' average. Echoing the trial court, Appellees maintain that if the legislature intended the calculation to be based on an average of the preceding twelve months' salary then it would have expressly said so. They dispute the relevance of *Kosey* and *City of Lower Burrell* because neither case examined how the "rate of the monthly pay" should be calculated, although benefits in both cases appeared to be calculated using a twelve months' average.

## II

The legislature has provided standards that apply when courts seek to resolve questions of statutory construction. For example, words and phrases are to be "construed according to rules of grammar and according to their common and approved usage...." 1 Pa.C.S. § 1903(a). Furthermore, the object of all statutory construction is "to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). The Court has recognized that when construing one section of a statute, the section must be read not in a vacuum but rather together with all other sections. *Galloway v. Workers' Compensation Appeal Board (Pennsylvania State Police)*, 756 A.2d 1209 (Pa.Cmwlth.2000). The Court as well should examine the other sections of a statute to ascertain whether an interpretation can be gleaned that gives effect to the statute as a whole. 1 Pa.C.S. § 1922. In this connection, the legislature presumes a sensible statutory construction and one that avoids absurdity and mischief. *Capital Academy Charter School v. Harrisburg School Dist.*, 934 A.2d 189 (Pa.Cmwlth.2007).

The Code governs all aspects of the operation of cities of the third class. *See* Sections 101–4701, 53 P.S. §§ 35101–39701. The article devoted to Pensions, Article XLIII, is divided into three parts relating to Police (Sections 4301–4309, 53 P.S. §§ 39301–39309); Firemen (Sections 4320–4328, 53 P.S. §§ 39320–39328); and Pension Funds for Employes Other Than Policemen and Firemen (Sections 4340–4353, 53 P.S. §§ 39340–39343). Each part contains similar but not identical language directing the calculation of benefits. The part relating to *police* requires using "the rate of the monthly pay" or the "highest average annual salary ... during any five years of service preceding ... retirement." Section 4303. The part relating to *firemen* requires a calculation based on:

> [T]he *monthly salary* of the member at the date of ... retirement, or the highest average annual salary which he received during any five years of service preceding retirement, whichever is the higher....

Section 4322(a), 53 P.S. § 39322(a) (emphasis added). The third part, relating to *other city employees,* entitles said employees to:

> [F]ifty per centum of the amount which would constitute the *average annual salary* or wages which he or she received *during the last* or any five years of his or her employment by the said city, whichever is the higher. . . .

Section 4343, 53 P.S. § 39343 (emphasis added).

■ While it is clear that separate pension calculation provisions exist for these different groups, there are a number of similarities in the provisions for each group. Each one provides for a monthly calculation and a five-year average, and each one permits a five-year average during any five years of service, recognizing that the final year presumably would be higher. Additionally, in each calculation the base amount is divided in half. Although the language "highest average annual salary" is identical with respect to firefighters and nearly identical for other city employees, the monthly calculation is set out in three different ways.

Assuming the position adopted by the trial court that the "rate of the monthly pay" means the final month's salary, it would be difficult to find the same interpretation for the "monthly salary" in Section 4322(a) and impossible to find it for the "average annual salary . . . during the last or any five years" in Section 4343. The trial court's interpretation would allow for the inflation of an officer's overtime hours during the final month of employment to increase pension benefits but would not allow for the inflation of a firefighter's or other city employee's overtime hours during the final month of work. Such interpretation produces an inequitable and unreasonable result and conflicts with all statutory construction presumptions.

■ The Court presumes legislative intent that favors public interests over private interests. *Frederick v. City of Butler,* 45 Pa.Cmwlth. 621, 405 A.2d 1343 (1979). The trial court's interpretation would not serve the interests of the municipality as it would create uncertainty with respect to predicting pension fund needs. The importance of maintaining a stable pension fund was recognized in *Borough of Beaver v. Liston,* 76 Pa.Cmwlth. 619, 464 A.2d 679 (1983), where the Court examined the question of whether overtime earnings should be included in calculating pension benefits under Section 5 of the Act of May 29, 1956, P.L. (1955) 1804, *as amended,* 53 P.S. § 771. Noting that pension statutes generally are construed in favor of the pensioner, the Court observed that the particular consequences of a construction may be considered when a statute is susceptible to more than one interpretation. Presuming that public interests override private interests it stated:

> The excluding from salary of compensation received for extra work performed for varying time periods at irregular intervals by different employes, promotes consistency and predictability in the collection of contributions and payment of benefits. By employing information concerning the uniform base salaries of eligible employes, municipalities are enabled to predict with greater precision the amount of pension benefits required *in futuro* and adjust the contribution rates accordingly, thus contributing to the maintenance of a stable fund with sufficient assets.

*Id.,* 464 A.2d at 682. The Court thus concluded that overtime earnings from which contributions had not been deducted should not be included in the retired offi-

cer's "salary" for purposes of calculating his monthly pension amount.

Given the above analysis, the Court concludes that the City's method of calculating Appellees' pension benefits by using an average of the last twelve months of their salary to arrive at their "rate of the monthly pay" represents a reasonable and appropriate construction of relevant pension calculation provisions. The Court's interpretation comports with pertinent statutory construction principles enunciated in the Statutory Construction Act, as stated above. It does not produce an absurd or unreasonable result; it allows for uniform and predictable construction of all of the sections of the Code; and it promotes public interests in maintaining a stable pension fund system. *Capital Academy Charter*; *Frederick*; *Liston*.

Accordingly, it is evident that the trial court committed an error of law in adopting Appellees' method of calculating their pension benefits based on the actual amount of their final month of earnings rather than on the City's calculation method. The trial court, as a consequence, erred in granting summary judgment to Appellees, and its order therefore must be reversed and this matter returned to the trial court to enter summary judgment in favor of the City.

### ORDER

AND NOW, this 12th day of December, 2008, the order of the Court of Common Pleas of Schuylkill County granting summary judgment to Appellees is reversed, and the Court hereby remands this matter to the trial court to enter summary judgment in favor of the City. Jurisdiction is relinquished.