9 A.3d 1174

Ronald GONTARCHICK, Susan Ann Gontarchick, his wife; Marlin Reed, Mary Jane Reed, his wife; and Matthew Reed, their son, Appellants

v.

CITY OF POTTSVILLE, Appellee.

Supreme Court of Pennsylvania.

Argued May 11, 2010.

Decided Dec. 21, 2010.

Anthony M. Caputo, Esq., Christina Marie Fisher, Esq., Lightman Welby Stoltenberg & Caputo, Harrisburg, for Ronald Gontarchick, Susan Gontarchick, Marlin Reed, Mary Jane Reed and Matthew Reed, appellants.

Cheryl Lynn Kovaly, Esq., James Dennis Young, Esq., Lavery, Faherty, Young & Patterson, P.C., Harrisburg, for City of Pottsville, appellee.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY and ORIE MELVIN, JJ.

## OPINION

Justice SAYLOR.

This appeal concerns the appropriate method, under the Third Class City Code, for calculating police pension benefits.

Appellants, Ronald Gontarchick and Marlin Reed, each served as full-time police officers for Appellee, City of Pottsville, for more than twenty years. Upon retirement, both submitted demands for pension benefits to the City's police pension fund, as established under the Third Class City Code.[1]

1. Act of June 23, 1931, P.L. 932 (as amended 53 P.S. §§ 35101–39701) (the "Code").

The demands were based on each officer's total gross compensation in the last month of his service, including compensatory time, overtime pay, clothing allowance, and service increments.

In calculating benefits, the City's pension board used a gross-compensation figure consistent with the demands. Nevertheless, the board refused to base the calculation on the actual, last-month-of-service rate of compensation as Appellants sought. Instead, consistent with past practices, the board averaged Appellants' compensation over their last twelve months of service, before reducing the resultant figure by one-half to determine the monthly pension benefit. *See* Pottsville, Pa., Ordinances ch. 46, art. I, § 10(B) (providing for police pension benefits at one-half of monthly salary or the highest annual salary from the last five years).

 In response, Appellants commenced a civil action in the court of common pleas—containing declaratory judgment, mandamus, and civil rights counts—seeking a recalculation of benefits consistent with their demands. Appellants relied on Article XLIII, Section 4303 of the Code, which provides, in relevant part, that police pensions are to be based on officers' "rate of monthly pay" as of the retirement date, as follows:

> The basis of the apportionment of the pension shall be determined by the *rate of the monthly pay* of the member at the date of . . . retirement, or the highest average annual salary which the member received during any five years of service preceding . . . retirement, whichever is the higher[.]

53 P.S. § 39303(a) (emphasis added).[2] Although the phrase "rate of monthly pay" is not defined in the statute, Appellants

2. Under the rationale of *Borough of Nazareth v. Nazareth Borough Police Association*, 545 Pa. 85, 680 A.2d 830 (1996), inclusion of additional compensation, such as overtime, in a "salary"-based pension calculation is appropriate, where the employee makes pension contributions from the relevant payments. *See id.* at 92–93, 680 A.2d at 834. Presently, there is no argument that "salary" and "rate of monthly pay" should be treated differently in this regard. Rather, the dispute centers over whether the use of an actual or average monthly pay figure should be used in the pension calculation.

took the position that the words denote the actual gross rate of all compensation paid in the last month of service.

On cross-motions for summary judgment, the common pleas court agreed with Appellants' position, which it regarded as consistent with Section 4303's governing language. The court reasoned that, had the General Assembly intended the use of an average of the last twelve months' salaries, it would have expressly said as much. Thus, the common pleas court entered judgment in Appellants' favor.

On appeal, the Commonwealth Court reversed and remanded for entry of judgment in favor of the City. *See Gontarchick v. City of Pottsville*, 962 A.2d 703 (Pa.Cmwlth.2008). Initially, the court expressed concern that Appellants' construction of Section 4303 resulted in an inexplicable disparity between police and firefighter pensions, which it characterized as inequitable and unreasonable, and thus, contrary to presumptions applicable in statutory construction. *See, e.g.,* 1 Pa.C.S. § 1922(1) (reflecting the presumption that the Legislature does not intend a result that is absurd or unreasonable). Furthermore, the Commonwealth Court highlighted the presumption that the General Assembly intends to favor public over private interests. *See Gontarchick*, 962 A.2d at 708 (referencing, indirectly, 1 Pa.C.S. § 1922(5)). The court reasoned that Appellants' construction would not serve the interests of the City and the public, as it would generate uncertainty regarding future pension fund needs. The Commonwealth Court thus concluded that the City's approach of using an average of the last twelve months of salary to arrive at a rate of monthly pay for police officers was a reasonable and appropriate reading of the governing statute.

 As reflected in the Commonwealth Court's opinion, this case presents an issue of statutory construction, over which the appellate review is plenary.

In their arguments to this Court, Appellants maintain that the plain terms of Section 4303 unambiguously require consideration of a retiring officer's actual last month's gross compensation. *See, e.g.,* Brief for Appellants at 13 ("If the General

Assembly intended a twelve (12) month average, as advocated by the City, it would have expressly done so as it did in the second calculation method, which requires the high [sic] annual average salary over the last five years."). They also emphasize the mandatory language of the statute, highlighting that the required method of calculation is non-discretionary. According to Appellants, averaging to determine a "monthly rate" renders the five-year look-back alternative superfluous (based on the assumption that a final years' compensation will always be highest). Thus, Appellants contend that, if the General Assembly had intended pensions to be calculated as advocated by the City, the statute would have been drafted to include only the highest-annual-salary method.

The City, on the other hand, takes the position that the phrase "rate of monthly pay," by its terms, contemplates an average of the employee's pay, assessed at the time of retirement and based on comparative earnings per month over time. In particular, the City focuses on the word "rate," which it suggests connotes an amount of charge or payment with reference to some basis of calculation; a certain quantity or amount of one thing considered in relation to another thing and used as a standard or measure. *See* Brief for Appellee at 9–10 (citing, *inter alia,* BLACK'S LAW DICTIONARY (6th ed.1991), and WEBSTER'S DICTIONARY (9th ed.1988)). In the City's view, had the General Assembly intended for municipalities to calculate pension amounts upon the retiring employee's "final month's salary," it would have done so on such terms.

The City references *City of Lower Burrell v. City of Lower Burrell Wage and Policy Committee,* 795 A.2d 432 (Pa. Cmwlth.2002), and *Kosey v. City of Washington Police Pension Board,* 73 Pa.Cmwlth. 564, 459 A.2d 432 (1983), as supportive. In these cases, the City observes, a twelve-month average rate of monthly pay was utilized as the base figure in pension calculations, albeit the City recognizes that the validity of the averaging practice was not before the Commonwealth Court in either case. The City maintains that a method of calculation employing averaging "fosters payment of consistent and fair pension benefits, deters any possibility of dispa-

rate treatment amongst employees, and furthers the orderly administration and financial soundness of [city] pension system[s]." Brief for Appellee at 17.

■ Upon our review, we find Section 4303 to be ambiguous. In addition to the connotations accompanying the word "rate," the adjective "monthly" also suggests the Legislature may have contemplated some sort of regularity. *See, e.g.,* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 806 (11th ed.2003) (defining "monthly," *inter alia,* as "occurring or appearing every month"). Thus there is potential disharmony in the inclusion of variable forms of compensation, such as unscheduled overtime. In light of the resultant, material ambiguity, we refer to the tools of statutory construction, including consideration of the occasion and necessity for the statute, the object to be attained, and the consequences of a particular interpretation. *See DPW v. WCAB (Harvey),* 605 Pa. 636, 653, 993 A.2d 270, 281 (2010) (citing 1 Pa.C.S. § 1921(c)). We also recognize the relevance of the presumption that the Legislature intends to favor public over private interests, *see* 1 Pa.C.S. § 1922(5), and the competing precept that social legislation, such as the statutory conferral of police pension, is to be construed liberally in favor of its intended beneficiaries. *See Crouse v. DGS,* 529 Pa. 26, 36, 601 A.2d 789, 794 (1992).

■ With the above relevant principles in mind, we agree with the Commonwealth Court that the City's calculation practice comports with a reasonable construction of Section 4303. There is simply too much opportunity for arbitrariness, disparity, and/or manipulation—arising from a system that contemplates a single month's total gross compensation as the litmus for lifetime pension benefits—for us to infer that the Legislature contemplated such a scheme. For example, benefits can be inflated or depressed substantially through the granting or withholding of extra work assignments over a short period of time. Thus, the outcome may be dependent on such unpredictable factors as the retiring officer's awareness of the significance of his last month's pay and understandable desire to maximize his pension; the cooperation or non-

cooperation of local police supervisors; the department's prevailing work demands; and/or an officer's physical abilities in his last work month.

As the intermediate court and the City have stressed, had the Legislature intended to open the potential for such a range of variables to factor so greatly in the determination of pension benefits, it readily could have said so directly by designating the last's month's total gross compensation as the base figure. As it is, Pennsylvania courts and local governments have applied sufficient liberality in their construction of police pension provisions by including non-regular compensation, such as unscheduled overtime, in the base figure from which pension benefits are calculated.[3] In the absence of clearer direction from the General Assembly, we conclude that the unpredictability inherent in Appellants' construction of Section 4303 impedes pension fund administration, and such result is sufficiently unreasonable to counsel against that construction's adoption.[4]

We hold that the City's practice of twelve-month averaging reflects a reasonable construction of Section 4303.

The order of the Commonwealth Court is affirmed.

Chief Justice CASTILLE, Justices BAER, TODD, McCAFFERY and ORIE MELVIN join the opinion.

Justice EAKIN files a concurring opinion.

Justice EAKIN, concurring.

I concur with the majority—§ 4303 is ambiguous. I also agree with the majority's finding "[t]here is simply too much

3. *Borough of Nazareth* indicates that payroll deduction of employee pension contributions may be a prerequisite to enforcement. *See Borough of Nazareth*, 545 Pa. at 92–93, 680 A.2d at 834. The rule in at least a number of other jurisdictions appears to be that salary, for purposes of pension calculations, does not include overtime. *See* 63 C.J.S. *Municipal Corporations* § 530 (2010).

4. We also differ with Appellants' perspective that the above construction creates a redundancy among the alternative methods for calculating benefits, since the underlying assumption that an officer's last year will always reflect his highest rate of compensation is not an accurate one.

opportunity for arbitrariness, disparity, and/or manipulation—arising from a system that contemplates a single month's total gross compensation as the litmus for lifetime pension benefits—for us to infer that the Legislature contemplated such a scheme." Majority Op. at 6, 9 A.3d at 1177. Thus, a calculation based on a 12–month average is not an inappropriate method under § 4303.

In calculating the pensions, the City added the officer's compensation over the year prior to retirement and divided that number by 12 to find an average monthly pay. A more precise approach, assuming the officer was paid by the hour, would be to average the hours worked, rather than the salary received. That is, add the total number of hours worked over the year prior to retirement, and divide that number by 12; this results in the average hours worked per month. Multiply this by the hourly rate the officer was being paid on the date of retirement and one finds a figure that more accurately reflects the "rate of monthly pay ... at the date of ... retirement...." 53 P.S. § 39303(a). This still uses the reasonable 12–month time-frame necessary to lessen the possibility of manipulation, but allows application of the actual rate of pay at retirement to be applied to the average hours worked each month, i.e., the "rate of monthly pay."