728 A.2d 914

**Thomas B. O'DONOGHUE and Margaret T. O'Donoghue, Appellants,**

**v.**

**LAUREL SAVINGS ASSOCIATION, a Pennsylvania Chartered Savings Association, Appellee.**

Supreme Court of Pennsylvania.

Submitted Sept. 8, 1997.

Decided April 21, 1999.

Reargument Denied June 30, 1999.

350

Matthew T. Phillips, Joseph A. Katarincic, Kim M. Watterson, Pittsburgh, for Thomas & Margaret O'Donoghue.

Hunter A. McGeary, Jr., Pittsburgh, for Laurel Savings Association.

Keith A. Clark, Camphill, for Pennsylvania Association of Community Bankers (Amicus Curiae).

Before ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION OF THE COURT

NEWMAN, Justice.

Thomas and Margaret O'Donoghue (collectively, Appellants) appeal from the Superior Court's Order affirming a summary judgment Order entered in the Court of Common Pleas of Allegheny County (trial court) in favor of Appellee Laurel Savings Association (Laurel). Appellants request this Court to decide whether Laurel violated Sections 681 and 682 of the Mortgage Satisfaction Law (the Law), 21 P.S. §§ 681 and 682, by not recording their satisfaction of their mortgages within forty-five days of full payment. We hold that Laurel did not violate the Law because it marked the mortgages satisfied within forty-five days of Appellants' request as required by Sections 681 and 682. Therefore, we affirm.

### FACTS

Thomas O'Donoghue owns several businesses, each of which operate on property that he and his wife own together. Appellants obtained three loans from People's Savings Association (People's) secured by mortgages on their various properties: Loan 1—March 15, 1978, in the amount of $379,000.00;

Loan 2—March 30, 1980, in the amount of $29,000.00; and Loan 3—December 23, 1980, in the amount of $190,000.00.

On or about May 30, 1986, a flood damaged the properties that secured Loans 1, 2, and 3. Consequently, on June 2, 1988, Appellants refinanced the loans with Laurel, which succeeded People's.[1] The refinancing resulted in Laurel issuing a fourth loan in the amount of $343,635.00 to pay off Loan 1, and secured by a mortgage on one of Appellants' properties (Loan 4). On the Settlement Sheet for Loan 4, Charles Ott, Executive Vice President of Laurel, wrote "Satis. Mortgage 1–1–2866," which was Laurel's mortgage number for Loan 1.

In addition, Laurel issued a fifth loan to satisfy Loan 2 and Loan 3, in the amount of $212,800.00, which was also secured by a mortgage on Appellants' properties (Loan 5). Mr. Ott similarly wrote on the Settlement Sheet for Loan 5 "Satis. Mtge. 1–12–3320" and "Satis. Mtge. 1–12–3219," which respectively correspond to Laurel's mortgage numbers for Loans 2 and 3.

In July or August of 1992, Appellants discovered that Loans 1, 2, and 3 appeared on their credit report as outstanding debt even though those loans had been paid in full. Appellants notified their attorney, who confirmed that Laurel had never marked the loans satisfied as of record. By letter dated November 17, 1992, Appellants' attorney informed Laurel of their failure to record the satisfaction of the mortgages for Loan 1, Loan 2, or Loan 3, and demanded that Laurel immediately mark each loan satisfied. Laurel complied within eight days of the demand letter.

Appellants filed a complaint on September 10, 1993, and an amended complaint on November 19, 1993, alleging, *inter alia*, that they had suffered damages as a result of Laurel's negligence. In Count I, of twelve,[2] Appellants claimed that Laurel

1. People's merged into Laurel on January 1, 1986, assuming all assets and liabilities.

2. Appellants raised the following twelve claims:
   Count I—statutory fine for failure to satisfy mortgages, 21 P.S. §§ 681 and 682;
   Count II—breach of contract for failure to satisfy mortgages;

violated Sections 681 and 682 by not marking Loans 1, 2, or 3 satisfied within forty-five days of their refinancing agreement on June 22, 1988; thus, Appellants were entitled to a fine pursuant to 21 P.S. § 682.

The trial court dismissed several counts in response to Laurel's preliminary objections. Laurel then moved for partial summary judgment on a number of the remaining claims, including Count I relating to Sections 681 and 682. Appellants likewise filed a motion for partial summary judgment regarding Count I, or, in the alternative, they opposed Laurel's motion for summary judgment on Count I, claiming that a genuine issue of material fact existed.

By Order dated May 24, 1995, the trial court granted summary judgment in favor of Laurel and denied Appellants' motion for summary judgment. Appellants filed a petition for reconsideration, which the trial court denied on July 18, 1995.

The case proceeded to trial and the jury found in favor of Appellants on the remaining counts, including breach of contract regarding escrow notification, and satisfaction of the mortgages, and awarded them $10,000.00 in damages. The court entered judgment on November 1, 1995, and Appellants appealed the May 24, 1995 Order granting summary judgment on Count I.

The Superior Court affirmed the summary judgment Order, and determined that a written request for satisfaction was necessary before a mortgagee was obligated to record satisfaction of a mortgage. Relying on the trial court's finding that

Count III—negligence in failing to satisfy mortgages;
Count IV—gross negligence;
Count V—breach of contract for violating escrow agreement;
Count VI—breach of contract for violations of notice provisions of mortgage;
Count VII—fraudulent misrepresentation;
Count VIII—negligent misrepresentation;
Count IX—lack of consideration;
Count X—negligence for failure to disclose;
Count XI—violations of the Unfair Trade Practices Act and Consumer Protection Law; and
Count XII—violations of the Debt Collection Trade Practices Act.
Only Count I is at issue in this appeal.

there were no discussions during the restructuring of the loans and mortgages on June 2, 1988 concerning the recordation of satisfaction of the mortgages securing Loans 1, 2, and 3, the Superior Court held that the November 17, 1992– demand letter was the first written request for satisfaction. Because Laurel recorded the satisfaction of the loans within eight days of receiving the demand letter, the Superior Court affirmed the trial court's Order granting summary judgment in favor of Laurel. Judge Hester concurred in the result, without opinion.

Appellants filed a Petition for Allowance of Appeal, which this Court granted. The questions before us are: (1) what constitutes a "request" to mark a mortgage satisfied for purposes of 21 P.S. §§ 681 and 682; and (2) did a genuine issue of material fact exist on this issue.

## DISCUSSION

Our review of a trial court's order granting or denying summary judgment is plenary. Summary judgment may be granted only when the facts, viewed in the light most favorable to the non-moving party, make it clear that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Marks v. Tasman*, 527 Pa. 132, 589 A.2d 205 (1990). "[A]n adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or [ ] otherwise ..., must set forth specific facts showing that there is a genuine issue for trial." Pa.R.C.P. No. 1035(d).[3]

Appellants allege that they reached an agreement with Laurel on June 22, 1988, that Laurel would mark as satisfied the mortgages securing Loans 1, 2, and 3, and that Laurel failed to comply with this agreement within forty-five days of full payment of the loans. Sections 681 and 682, respectively, of the Mortgage Satisfaction Law, provide as follows:

3. Rule 1035 was effective at the time that the trial court entered its order granting summary judgment in favor of Laurel. It was rescinded Feb. 14, 1996, effective July 1, 1996, and replaced by Pa.R.C.P. Nos. 1035.1–1035.5, enacted Feb. 14, 1996, effective July 1, 1996.

§ 681.   Satisfaction of mortgage on margin of record or by satisfaction piece

Any mortgagee of any real or personal estates in the Commonwealth, having received full satisfaction and payment of all such sum and sums of money as are really due to him by such mortgage, *shall, at the request of the mortgagor, enter satisfaction* either upon the margin of the record of such mortgage recorded in the said office or by means of a satisfaction piece, which shall forever thereafter discharge, defeat and release the same; and shall likewise bar all actions brought, or to be brought thereupon.

§ 682.   Fine for neglect

And if such mortgagee, by himself or his attorney, *shall not, within forty-five days after request* and tender made for his reasonable charges, return to the said office, and there make such acknowledgement as aforesaid, he, she or they, neglecting so to do, shall for every such offence, forfeit and pay, unto to party or parties aggrieved, any sum not exceeding the mortgage-money, to be recovered in any Court of Record within this Commonwealth, by bill, complaint or information.

21 P.S. §§ 681, 682 (emphasis added).

Satisfaction of a mortgage and marking the mortgage satisfied are two separate and distinct actions. "Satisfaction of a mortgage" occurs when all sums due and owing are tendered to the mortgagee. "Marking a mortgage satisfied" takes place when the mortgagee physically notes in the margin of the official mortgage papers, or by a satisfaction piece, that the mortgage has been paid in full. 21 P.S. § 681. Once the mortgage is marked satisfied, all interested parties are on notice that the obligation of the loan has been fulfilled.

The statute does not automatically obligate a mortgagee to mark the mortgage satisfied upon receipt of all money due pursuant to the loan. Instead, a mortgagor has an affirmative duty to make his or her desire to have the mortgage marked satisfied known to the mortgagee before an obligation arises. 21 P.S. § 682. Thus, to prove entitlement

to the fine pursuant to 21 P.S. § 682, a mortgagor must demonstrate the following: (a) he has paid all sums due and owing pursuant to the mortgage; (b) he requested the mortgagee to satisfy the mortgage; and (c) the mortgagee failed to mark the mortgage satisfied within forty-five days of the request.

The parties do not dispute that the proceeds from Loans 4 and 5 were used to discharge the obligations on Loans 1, 2, and 3. Nor do they dispute that Laurel failed to mark the mortgages for Loans 1, 2, or 3 satisfied as of record within forty-five days of the restructuring agreement. The only issue in dispute is whether, during the restructuring agreement discussions, Appellants requested that Laurel mark the mortgages satisfied.

The Superior Court held that an oral request for satisfaction would not be sufficient to commence the running of the forty-five-day period for satisfaction. Instead, the Superior Court read a *writing* requirement into the statute. It reasoned as follows:

> More than an unstated presumption or expectation must exist before the harsh and penal sanctions of the statute can be imposed. . . . Strictly construed, the statute may not require that notification be formal and in writing, but holding that financial institutions need not receive written notification would subject them to untold penalties for failure to satisfy a mortgage which may or may not be warranted.

Superior Court Op. at 9–10. We conclude that the Superior Court's concerns are unfounded and it was error to read a writing requirement into the statute when one does not exist.

Where the language of a statute is unambiguous, we must not ignore the plain language under the guise of pursuing the spirit of the law. 1 Pa.C.S. § 1921. Words and phrases are to be given their common and approved meaning unless they are technical words that have acquired special meaning. 1 Pa.C.S. § 1903. Request is commonly defined as an "attempt to obtain (something) by making one's wants or desires known in speech or writing; to attempt to get (someone) to do or give

something that one wants by making this known in speech or writing." THE NEW LEXICON WEBSTER'S DICTIONARY 846 (1988). Black's Law Dictionary defines a request as "[t]he expression of a desire to some person for something to be granted or done, particularly for the payment of a debt or performance of a contract." BLACK'S LAW DICTIONARY 1304 (6th ed.1990). The ordinary meaning of the term request, therefore, encompasses either verbal or written expression.

■ In discussing the limits of the statutory construction act, the Superior Court has stated:

> [W]e may not add provisions which the legislature has omitted unless the phrase is necessary to the construction of the statute. *Commonwealth v. Reeb,* 406 Pa.Super. 28, 593 A.2d 853 (1991); *Commonwealth v. Scott,* 376 Pa.Super. 416, 546 A.2d 96 (1988), *allocatur denied,* 522 Pa. 612, 563 A.2d 497 (1989). *See Commonwealth v. Rieck Investment Corporation,* 419 Pa. 52, 213 A.2d 277 (1965) (it is not for courts to add to a statute, by interpretation, a requirement which the legislature did not see fit to include); *Kusza v. Maximonis,* 363 Pa. 479, 70 A.2d 329 (1950) (court cannot supply omissions in a statute by its powers of construction where it appears the omission was intentional). If a phrase is necessary, it may be added but only if the addition does not affect the scope of the statute. *Id. See also Commonwealth v. Fisher,* 485 Pa. 8, 400 A.2d 1284 (1979). *See Garcia v. Community Legal Serv. Corp.,* 362 Pa.Super. 484, 524 A.2d 980 (1987), *allocatur denied,* 517 Pa. 623, 538 A.2d 876 (1988) (adding the word "physical" to the term "injury" improperly limited the scope of the statute).

*Commonwealth v. Berryman,* 437 Pa.Super. 258, 267–68, 649 A.2d 961, 965–66 (1994). The legislature has specifically mandated written requests in other notice requirement statutes, but omitted such a restriction in Sections 681 and 682. *See, e.g.,* 42 Pa.C.S. § 8104 (written notice required to begin running of period in which judgment creditor must mark judgment satisfied).[4] Interpreting Sections 681 and 682 to demand

4. § 8104. Duty of judgment creditor to enter satisfaction

a written request would require us to read a limitation into the statute that is not present. The language of the statute and the common and ordinary meaning of the word "request" lead us to conclude that the Mortgage Satisfaction Law does not mandate a written request, and that a verbal request will suffice.

■ Next, we must decide whether an agreement between a mortgagor and a mortgagee will constitute a request. Again referring to the common usage, a request is an expression of one's desire for another to do something. When interpreting the request requirement of 42 Pa.C.S. § 8104, this Court has held that an agreement that another will perform a certain action will constitute a request. *Woodstown Construction Inc. v. Clarke*, 362 Pa.Super. 119, 523 A.2d 804, *rev'd on other grounds*, 516 Pa. 519, 533 A.2d 708 (1987). This agreement necessarily includes an expression by the mortgagor to have the mortgage marked satisfied. A formal demand separate and apart from a general discussion and understanding, thus, is frivolous. *Id.* Accordingly, a verbal agreement that the mortgagee will record the payment of the mortgage fulfills the request requirement of Section 681 and 682.

Having decided what will constitute a request, we next determine if a genuine issue of material fact exists regarding whether Appellants requested Laurel to mark their mortgages satisfied prior to the November 17, 1992–demand letter. Appellants contend that as part of the restructuring discussions, Laurel agreed to mark the mortgages for Loans 1, 2, and 3

(a) General rule.—A judgment creditor who has received satisfaction of any judgment in any tribunal of this Commonwealth shall, *at the written request of the judgment debtor,* or of anyone interested therein, and tender of the fee for entry of satisfaction, enter satisfaction in the office of the clerk of the court where such judgment is outstanding, which satisfaction shall forever discharge the judgment.

(b) Liquidated damages.—A judgment creditor who shall fail or refuse for more than *30 days after written notice* in the manner prescribed by general rules to comply with a request pursuant to subsection (a) shall pay to the judgment debtor as liquidated damages 1% of the original amount of the judgment for each day of delinquency beyond such 30 days, but not less than $250 nor more than 50% of the original amount of the judgment.

42 Pa.C.S. § 8104.

satisfied. They assert that the agreement is evidenced by Laurel's notation on the settlement sheets of Loans 4 and 5 that those loans satisfied the mortgages for Loans 1, 2, and 3. As further evidence of the agreement, Appellants refer to the deposition testimony of Charles Ott, Executive Vice–President for Laurel at the time of the execution of Loans 4 and 5. The following exchange took place between Appellants' attorney and Mr. Ott during Mr. Ott's deposition:

Q. In the right-hand column [of the settlement sheet] it says STATIS. [sic] mortgage, and a number after that. Is that your handwriting?

A. Yes.

Q. What does that mean?

A. That's payoff of the mortgage.

Q. Does that mean satisfy mortgage?

A. What I have there. I guess in my mind satisfaction or satisfy mortgage and payoff were the same because that balance would have been the balance of the mortgage. That figure would have been the balance of the mortgage to pay it off.

\* \* \*

Q. Did you agree to satisfy the prior mortgage?

A. Pardon me?

Q. Did you agree to satisfy the mortgage which this was paying off?

A. We always do that, yes.

Charles Ott Deposition, Reproduced Record at 000351.

As further confirmation of the parties' understanding that Laurel was to mark the mortgages satisfied, Appellants point to a letter dated November 20, 1992 from Bernard Prazer, Laurel's Vice President of Lending. In his letter, Mr. Prazer stated, in part, the following:

The mortgages in question where part of a refinancing package put together for Mr. & Mrs. O'Donoghue on June

2, 1988, and *due to an oversight at that time the mortgages where [sic] never satisfied.*

Please be advised that all mortgages in question will be satisfied immediately. . . .

Bernard W. Prazer, Letter dated November 20, 1992, R.R. at 000359 (emphasis added). Furthermore, Appellants submitted a copy of their November 17, 1992–demand letter that Laurel had received, and on which someone had handwritten "apparently a clerical error." R.R. at 000357.

Laurel, on the other hand, argues that Mr. O'Donoghue conceded during his deposition that he neither requested nor discussed marking the mortgage satisfied with any Laurel personnel from the date of the closing on June 2, 1988 until the November 17, 1992–demand letter. During his deposition, Mr. O'Donoghue stated the following:

[Defense Counsel]. Prior to Attorney Kelly sending the [November 17, 1992] letter to Laurel Savings or making a demand to Laurel Savings, had you verbally by phone or otherwise made a request of Laurel Savings to satisfy those three mortgages?

[Mr. O'Donoghue]. I don't remember if I did. *My guess is no, I didn't.*

[Defense Counsel]. Do you recall any conversations with anyone at Laurel Savings Association prior to July or August of 1992 where satisfaction of those three mortgages was discussed?

[Plaintiff's Counsel]. Are you talking about that period?

[Defense Counsel]. I want to know prior to July [of 1992].

[Plaintiff's Counsel]. But how far back?

[Defense Counsel]. From June 2nd, 1988 until July of 1992—

[Plaintiff's Counsel]. *In other words, your question includes the closing and all the way forward to July—the closing on June 2nd, 1988 and all the way through to [ ] July, 1992.*

[Defense Counsel]. That's correct. I want to know during that time period from June 2nd, 1988 up until July of 1992

when he was contacted by West View and the credit agency whether he had had any conversations with anyone at Laurel Savings about satisfying those three mortgages.

[Mr. O'Donoghue]. *No.*

Thomas O'Donoghue Deposition, R.R. at 000130–131 (emphasis added).

■ Sections 681 and 682 do not impose a duty or a penalty on a mortgagee for failing to mark a mortgage satisfied unless there is a request and the mortgagee does not comply with the request within forty-five days. Here, based on Mr. O'Donoghue's undisputed testimony, he did not request that Laurel mark the mortgages satisfied until the November 17, 1992–demand letter. Mr. Ott testified that it is Laurel's normal practice to consider mortgages "satisfied" upon full payment, however, Laurel did not have an affirmative duty to record the payment of the loans until they received the November 17, 1992–demand letter.

As discussed previously, the terms "satisfy a mortgage" and "mark a mortgage satisfied" have two distinct meanings. Mr. Ott acknowledged this distinction in his deposition:

Q. So [ ] the mortgage[s] described in Exhibit 6 and Exhibit 10A [settlement sheets for Loans 4 and 5] were paid off in full. Is that correct?

A. Those were paying off the principal balances owing on those loans, yes.

\* \* \*

Q. And because it was paid off in full, you put this—you put on Exhibit 6 and Exhibit 10A satisfy mortgage three times.

A. That's what's on there, yes.

\* \* \*

Q. So those mortgages were satisfied, right?

A. Well, that's—the fact that I used satisfy mortgage doesn't—that's not the relationship that—in other words, *to me that doesn't mean I'm going down and satisfy that mortgage,* this particular statement here. Now, both of those [are] the principal balance that was owing on those mortgages. *Satisfying the mortgage is another procedure.*

Charles Ott Deposition, R.R. 000175–177. Thus, when viewed in the light most favorable to Appellants as the non-moving party, the facts show that Loans 4 and 5 paid in full the sums due and owing pursuant to Loans 1, 2, and 3 and Laurel recognized that Loans 1, 2, and 3 were satisfied. However, the uncontradicted deposition testimony also reveals that Appellants never requested and Laurel never agreed to record the satisfaction of those loans. Consequently, the trial court was correct in granting summary judgment in favor of Laurel because no genuine issue of material fact exists.

## CONCLUSION

Accordingly, we hold that the trial court properly entered summary judgment in favor of Laurel and affirm the Superior Court.

Chief Justice FLAHERTY did not participate in the consideration or decision of this case.

Justice ZAPPALA files a dissenting opinion in which Justice NIGRO joins.

ZAPPALA, Justice, dissenting.

I agree with the majority's holding that the statutory provisions governing the satisfaction of mortgages, 21 P.S. §§ 681–682, do not require a written request be made by the mortgagor to enter satisfaction of the mortgage. I do not agree, however, that the entry of summary judgment in favor of Appellee Laurel Savings Association by the common pleas court was proper. I find that the record demonstrates that there is a genuine issue of material fact regarding whether the O'Donoghues had an agreement with Laurel to mark their

mortgages satisfied prior to the written demand made by the O'Donoghues' attorney on November 17, 1992.

Summary judgment may be entered only in those cases where the record clearly demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. The record must be viewed in the light most favorable to the opposing party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *P.J.S. v. Pennsylvania State Ethics Commission,* 555 Pa. 149, 723 A.2d 174 (1999). Applying this standard of review, I find that there is a genuine issue of material fact as to whether the O'Donoghues and Laurel had agreed during the process of restructuring the loans that Laurel would mark the mortgages previously held by Laurel's predecessor, People's Savings Association, as satisfied when the mortgages were paid off with other loans.

The O'Donoghues entered into a series of loans with People's Savings Association, borrowing $379,500 on March 15, 1978 (Loan No. 1–01–2866), $29,000 on March 30, 1980 (Loan No. 1–12–3219), and $190,000 on December 23, 1980 (Loan No. 1–12–3320). The loans were secured by mortgages on the O'Donoghues' properties, including The Blarney Stone Restaurant. After a flood on May 30, 1986 damaged the properties that secured the loans, the O'Donoghues were informed by Laurel officials that assistance in rebuilding efforts would be provided. The O'Donoghues subsequently applied to the Small Business Administration for a $500,000 disaster loan to finance repairs to the restaurant.

During his deposition testimony, Thomas O'Donoghue testified that throughout the time period from May 30, 1986 to the beginning of 1988 there were ongoing discussions with Charles L. Ott, Laurel's vice-president, about how to bring payments on the mortgaged properties current. Mr. O'Donoghue indicated that he requested additional funding from Laurel for completion of renovations to the restaurant to get into full operation. Mr. O'Donoghue also spoke to Laurel officials, including Mr. Ott, about assistance in restructuring the loan

obligations to Laurel so that the O'Donoghues could obtain SBA financing.

On February 9, 1988, Laurel advised the O'Donoghues that it would restructure the mortgages for the three earlier loans by extending the maturities of the notes secured by those mortgages. Additional security was required and a cross default clause connecting all of the encumbered property was to be inserted in the new mortgages. The O'Donoghues agreed to the restructuring of the mortgages. Mr. O'Donoghue had several meetings with Mr. Ott in the months before the closing date of June 2, 1988 to sign papers in preparation for the restructuring.

At the June 2, 1988 closing of the restructured loans, the O'Donoghues executed a note in the principal amount of $343,635 (Loan No. 4216) and a second note in the principal amount of $212,800 (Loan No. 4217). The notes were secured by mortgages on the restaurant property and other properties of the O'Donoghues. The O'Donoghues understood that the proceeds of the loans were to be used to pay off and satisfy the three earlier loans. The proceeds were in fact applied to pay off the obligations of the loans.

In their amended complaint, the O'Donoghues asserted that it was further agreed that Laurel would satisfy the mortgages securing the earlier loans. Laurel disputes this allegation, arguing that neither Mr. O'Donoghue nor any representative on his behalf made any requests that the mortgages be satisfied prior to the written demand of the O'Donoghues' attorney on November 17, 1992. Laurel argues that there is no genuine issue of material fact as to whether the parties agreed that Laurel would satisfy the mortgages after closing on the restructured loans. I disagree.

The deposition testimony of Mr. Ott does not establish that no agreement was made with the O'Donoghues that the mortgages would be satisfied after the closing. Mr. Ott's testimony was that it was Laurel's normal procedure to satisfy the prior mortgages in connection with refinancing loans. The dispute between the parties is whether Mr. Ott's use of the

term "satisfying" a mortgage indicated Laurel's agreement with the O'Donoghues to merely pay off the outstanding obligations or to satisfy the mortgages as that term is understood under the law governing the satisfaction of mortgages.

Mr. Ott testified during his deposition as follows:

Q. * * * At the time of the financing in June of 1988, it was clearly understood by you that the O'Donoghue mortgages that were just refinanced would be satisfied. Is that not correct?

A. That was normal procedure.

Q. That was your understanding.

A. Yes.

(R. 194–195). Mr. Ott further testified:

Q. Did you agree to satisfy the prior mortgages?

A. By normal course we do that, yes. I don't know whether there was a verbal agreement—I don't know that it was ever discussed verbally.

Q. In other words, it was your understanding that he would satisfy the prior mortgages—is that correct— that were paid off?

A. By normal course we do that, yes.

Q. Right. That was your understanding in connection with these three refinances. Is that correct?

A. No. My understanding—I wouldn't have thought anything any differently.

Q. Okay. In other words, you assume the mortgage—the prior mortgage would be satisfied. Is that correct?

A. By normal course they are, sure.

Q. That's the association's practice, is it not?

A. Yes.

Q. When you would [sic] not satisfy a mortgage that was paid off?

A. No situation that I know of.

(R. 185–187).

Mr. Ott was present at the closing on June 2, 1988, and had prepared the settlement statements signed by the O'Donoghues on that date. The settlement sheet for Loan No. 4216 contains the notation "SATIS. MORTGAGE 1–1–2866" (the loan made by Laurel on March 15, 1978) across from the figure of $343,635.00. The settlement sheet for Loan No. 4217 contains the notation "SATIS. MTGE. 1–12–3320" (the loan made by Laurel on December 23, 1980) across from the figure $169,116.31, and the notation "SATIS. MTGE. 1–12–3219" (the loan made by Laurel on March 30, 1980) across from the figure $27,603.46. (R. 74–75).

Mr. Ott testified that the notation referred to payoff of the mortgage. When asked whether the notation meant satisfy the mortgage, he responded, "I guess in my mind satisfaction or satisfy mortgage and payoff were the same because that balance would have been the balance of the mortgage." (R. 351).

On November 17, 1992, a letter was sent by an attorney who represented the O'Donoghues to Edwin Maus, Laurel's President, regarding the failure to satisfy the mortgages. The letter indicates that Mr. O'Donoghue had sought advice from the attorney after experiencing difficulty in obtaining credit. The attorney advised him to obtain a copy of a current credit report. The report indicated that the outstanding obligations to Laurel exceeded the amount believed to be owed. The attorney then determined that the earlier mortgages had never been satisfied by Laurel. A demand was made upon Laurel to immediately satisfy the mortgages and to explain the reasons why Laurel had not satisfied those mortgages for more than four years after receipt of payment in full of each. (R. 358).

By letter dated November 20, 1992, Bernard W. Prazer, Laurel's Vice President of Lending, responded that "[t]he mortgages in question where [sic] part of a refinancing package put together for Mr. & Mrs. O'Donoghue on June 2, 1988,

and due to an oversight at that time the mortgages where [sic] never satisfied." The letter indicated that the mortgages would be satisfied immediately. An apology was offered, with an explanation that "it was an error and not done intentionally." (R.359).

This record indicates that there is a genuine issue of material fact as to whether an agreement had been reached with Laurel during the process of the debt restructuring that the original mortgages would be marked as satisfied. It is for the factfinder to determine whether Mr. Ott's explanation that his use of the phrase, satisfy the mortgage, was not intended to mean satisfaction as understood under 21 P.S. §§ 681–682, but instead was used to mean pay off the outstanding balance, is credible. Furthermore, it is for the factfinder to determine whether Mr. Ott communicated his intended meaning of the phrase to the O'Donoghues during the process of restructuring the loans. Because the letter of Mr. Prazer appears to indicate that Laurel's failure to satisfy the mortgages was due to an error on Laurel's part, rather than the absence of an agreement to satisfy the mortgages, I find that summary judgment in Laurel's favor was improper.

Finally, I do not agree with the majority that the deposition testimony of Mr. O'Donoghue indicates that the O'Donoghues never requested and Laurel never agreed to record the satisfaction of the original mortgages. The majority cites Mr. O'Donoghue's testimony that from the closing date of June 2, 1988 to July, 1992, Mr. O'Donoghue did not have any conversations with anyone at Laurel about satisfying the three mortgages. The O'Donoghues have asserted that they reached an understanding with Laurel that the mortgages would be marked satisfied during the course of restructuring their loans. Mr. O'Donoghue testified that the restructuring process took place over a number of months. His deposition testimony, which does not refer to the months before the closing date, does not contradict the O'Donoghues' claim that an agreement to satisfy the mortgages was reached earlier. The O'Donoghues should be given the opportunity to prove their claim at trial. Based upon this record, it cannot be

determined as a matter of law that no agreement was made between the parties.  Therefore, I dissent.

Justice NIGRO joins this Dissenting Opinion.