J-S23017-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| STEVEN RUBIN, EXECUTOR OF THE ESTATE OF MILTON RUBIN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| STEPHEN KANYA AND INSECTARIUM AND BUTTERFLY PAVILION, INC. | : | |
| | : | |
| APPEAL OF: INSECTARIUM AND BUTTERFLY PAVILION, INC. | : | No. 1278 EDA 2023 |

Appeal from the Judgment Entered June 23, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 170600979

BEFORE:   STABILE, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                    **FILED OCTOBER 11, 2024**

Appellant, Insectarium and Butterfly Pavilion, Inc. ("Insectarium"), appeals from the judgment entered in the Philadelphia County Court of Common Pleas, in favor of Appellee Steven Rubin, Executor of the Estate of Milton Rubin ("Estate"), and against Stephen Kanya ("Kanya") and Insectarium.[1]  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] An appeal properly lies from the entry of judgment following the disposition of any post-trial motions. ***Johnston the Florist, Inc. v. TEDCO Const. Corp.***, 657 A.2d 511, 514 (Pa.Super. 1995) (*en banc*).  A judgment filed simultaneously with the verdict results in that judgment being premature and, therefore, void. ***Jenkins v. Robertson***, 277 A.3d 1196, 1199 (Pa.Super.
*(Footnote Continued Next Page)*

The relevant facts and procedural history of this case are as follows. In 1989, Milton Rubin loaned Kanya $350,000.00 to buy the property located at 8046-48 Frankford Avenue in Philadelphia, PA ("Property"). That loan was secured by a mortgage to the Property, which was recorded on March 14, 1989. The mortgage originally required Kanya to pay monthly interest payments on the mortgage, and make a principal payment of $50,000.00 eighteen months after the closing of the loan, together with a balloon payment of the remaining $300,000.00 principal in 1994. The mortgage also provided that the mortgagor was not permitted to cause or permit any other liens or encumbrances on the Property and was not permitted to transfer title to the Property without the permission of the mortgagee. In 1994, Milton Rubin and Kanya orally agreed that the mortgage would no longer require the balloon payment.

In 1996, after Milton Rubin passed away, his son Steven Rubin became executor of the Estate. As executor of the Estate, and now mortgagee, Steven Rubin orally agreed to modify the mortgage, providing that the $350,000.00 principal would be payable at any time, Kanya would continue making interest payments on the loan, and any missed payments would be added on to the

_____

2022). Here, the trial court purported to enter final judgment at the time of the verdict and prior to the filing of post-trial motions. Such action renders the initial judgment entered void. *See id.* Following disposition of post-trial motions, Insectarium filed a *praecipe* for entry of judgment on June 23, 2023. We have amended the caption accordingly.

end of the loan. Kanya made payments in accordance with this agreement from 1996 until 2016, generally making interest payments from May through September each year, during the pest-control busy season when he had the most work. Kanya made several irregular payments during his off-season months.

Kanya still had not paid off the mortgage in 2010 when he filed for Chapter 11 bankruptcy in Florida. The Estate made a claim in the bankruptcy proceedings for the remaining money owed under the mortgage. The bankruptcy court confirmed a reorganization plan on July 1, 2011, which provided that (1) the Estate held a mortgage on the Property secured by a lien of $350,000.00, (2) the Estate would retain its lien and be paid in accordance with this contract, and (3) Kanya would pay $35,463.00 in arrearages to the Estate on the mortgage, payable in equal monthly payments of $1,000.00 until the arrearage is cured.

During this time, Kanya had been running Steve's Bug Off and Wildlife Insectarium on the Property. In 2016, Kanya met Dr. John Cambridge ("Cambridge"), an entomologist who came to Insectarium to help work on developing a butterfly pavilion. Eventually, Kanya invited Cambridge to become a partner and conveyed a 30% interest in the Insectarium to Cambridge. Cambridge offered to pay off the Estate and other debts if Kanya signed over the Property to him. Thereafter, Cambridge's father, defense counsel in the instant matter, drafted a quitclaim deed, which Kanya signed

to transfer the Property to Insectarium. The deed was recorded on December 2, 2016.

Kanya made his last mortgage payment in December 2016. Insectarium made no payments on the mortgage after taking possession of the Property in 2016. The Estate issued a notice of default in May 2017, and initiated the instant mortgage foreclosure complaint in August 2017 against Kanya and Insectarium.[2] In his answer to the mortgage foreclosure action, Kanya admitted that the mortgage was valid, that it was reaffirmed when he filed for bankruptcy, and that he was in default under the terms of the mortgage. Nevertheless, Insectarium vigorously defended against the Estate's action. The case proceeded to trial and the court initially found in favor of Kanya and Insectarium and against the Estate on the ground that the statute of limitations for the mortgage contract had expired in 1994. The Estate timely appealed.

On appeal, this Court held that the trial court failed to recognize that the bankruptcy court's confirmation of Kanya's reorganization plan constituted a binding contract. This Court explained: "Kanya's bankruptcy plan provided

_____

[2] On February 27, 2018, the Estate filed a motion in the Florida bankruptcy court seeking relief from the automatic stay in Kanya's ongoing bankruptcy case to prosecute the mortgage foreclosure action against Kanya in Pennsylvania. On March 7, 2018, the Bankruptcy Court granted the Estate relief from the automatic stay to prosecute the foreclosure action in Pennsylvania against Kanya. *See Rubin v. Kanya*, No. 2049 EDA 2019, unpublished memorandum at 5-6 (Pa.Super. filed March 1, 2022).

- 4 -

that (1) the [E]state held a mortgage on the Property secured by a lien of $350,000.00, (2) the [E]state must be paid in accordance with this "contract," and (3) Kanya would pay arrearages of over $35,000.00 to the [E]state." *Rubin, supra* at 11 (internal citations omitted). This Court held that "the Bankruptcy Court's confirmation of Kanya's reorganization plan created a binding contract between Kanya and the [E]state as of the date of confirmation, July 1, 2011. Consequently, any breach of this agreement had to have taken place after July 1, 2011, so the statute of limitations on the [E]state's foreclosure action had to have begun running after July 1, 2011 as well." *Id.* at 13 (internal citation omitted).

Having determined that the trial court erred in its statute of limitations calculations, this Court remanded for a new trial where "fact questions remain[ed] as to when or if a default occurred after July 1, 2011, and thus whether or when the statute of limitations began to run[.]" *Id.* at 14. This Court further noted that although it was remanding for a new trial, the *res judicata* effect of the confirmation of Kanya's bankruptcy plan, requires the trial court upon remand to find: "that a contract existed between Kanya and [the Estate] as of July 1, 2011, the date of plan confirmation, for Kanya to pay a mortgage of $350,000.00 as well as arrearages of $35,463.00 in equal monthly payments of $1,000.00." *Id.* at 15 (internal citations omitted).

On November 28, 2022, the trial court held a new trial. At trial, Kanya testified concerning both the original mortgage and the oral modification that

he entered into with Milton Rubin. Kanya also explained how he became involved with Cambridge and the circumstances under which he transferred the Property to Cambridge via quitclaim deed. Kanya testified that there was an oral modification of the original terms of the contract changing the default interest from 10 percent to 15 percent, "that he was not permitted to transfer the [P]roperty without prior consent to which he was never given, and that he reaffirmed the mortgage in bankruptcy, and that his last payment was in December of 2016." (Trial Court Opinion, filed 10/25/23, at 3).

The Estate introduced the testimony of Lauren Iacona, who does administrative work for the Estate and tracked payments received on the mortgage. Ms. Iacona testified that no principal payments were made on the loan, and the outstanding interest was $137,874.96 up until 2016, and $309,166.68 from 2017 through 2022, for a total unpaid interest of $447,041.64. That amount, in addition to the $350,000.00 outstanding principal, resulted in the total that the Estate sought as part of the foreclosure judgment—$797,041.64. In addition, Ms. Iacona testified that the total attorneys' fees billed to the Estate for the foreclosure action was $132,730.00.[3] Hence, the grand total due to the Estate under the mortgage—

---

[3] This sum included attorneys' fees for January 2019 of $1,920.56, which was not included in the Estate's Exhibit P7, which showed total attorney fees and costs through December 31, 2018, of $128,265.44.

principal, unpaid interest, and attorney fees—amounted to $929,771.64.[4] (N.T. Trial, 11/28/22, at 149-55).

Steven Rubin also testified in his role as executor of the Estate. He explained that after Milton Rubin passed away in 1997, he reaffirmed the agreed-to terms of the mortgage with Kanya. Mr. Rubin testified that he first learned about the quitclaim deed from Kanya to Insectarium in April 2017 and clarified that he never gave permission to transfer the Property. He also reaffirmed the total amount of foreclosure judgment sought. (*See id.* at 179-80). Finally, Mr. Rubin testified that the remedy for default set forth in the mortgage included the right to possess the Property upon default.

After the close of the Estate's case-in-chief, Cambridge, who was a chief executive of Insectarium, testified as to his recollection of how the business partnership between himself and Kanya came about, and explained that the transfer of the Property was done to obtain loans for construction of the butterfly pavilion on the Property. Cambridge stated that lenders were hesitant to loan the company money when they saw that Kanya had a prior bankruptcy. Throughout Cambridge's testimony, and in response to

---

[4] Because the Estate's exhibit did not include attorneys' fees for January 2019, there was a slight discrepancy in the total amount that Ms. Iacona testified was owed to the Estate (originally claimed to be $927,851.08 vs. $929,771.64, which included the January 2019 attorneys' fees). The Estate included the claim for attorneys' fees for January 2019 in a motion to reassess damages, filed in the trial court on April 26, 2023, during the pendency of this appeal.

objections from counsel for the Estate, the court explained that Cambridge's testimony concerning money that he and his parents had invested in the Property was relevant only to the extent that it related to the Estate's right to foreclose on the Property. (**See** N.T. Trial, 11/29/22, at 33-35).

On March 8, 2023, the court entered a verdict[5] in favor of the Estate and against Insectarium and Kanya in the amount of $927,851.08 plus interest and costs, and ordered immediate possession of the Property to the Estate.[6] Insectarium filed post-trial motions on March 15, 2023, which the court denied on May 11, 2023.[7] Insectarium filed a premature notice of appeal

_____

[5] As discussed in footnote 1 **supra**, the court also purported to enter judgment on the verdict the same day, which was a legal nullity.

[6] Although generally an action in mortgage foreclosure is strictly an *in rem* proceeding, the terms of the mortgage in this case provided that the Estate's remedies upon default included a monetary judgment in foreclosure of the mortgage and the right to obtain immediate possession of the Property. (**See** Mortgage Agreement, Plaintiff's Exhibit 2). The terms of the mortgage also provided for recovery of attorneys' fees.

[7] On March 9, 2023, Insectarium filed a suggestion of bankruptcy. **See In re Insectarium and Butterfly Pavilion, Inc.**, Bkrtcy ED PA Chapter 11 Case No. 23-10675. This bankruptcy filing automatically stayed any further proceedings in the trial court. Despite the stay, Insectarium filed post-trial motions on March 15, 2023, and an initial notice of appeal on March 18, 2023. (The March 18, 2023 appeal, docketed at 750 EDA 2023, was discontinued by this Court on May 5, 2023, after Insectarium filed an application to withdraw, which this Court accepted as a *praecipe* to discontinue under Pa.R.A.P. 1973). The Estate filed a motion for relief from the automatic stay, which the bankruptcy court granted on April 12, 2023, lifting the stay to permit the Estate to proceed with state court remedies and foreclose on the Property. That same day, the Estate filed a *praecipe* for writ of possession. On April 13, 2023, Insectarium filed a motion for emergency order requesting that the trial
*(Footnote Continued Next Page)*

_____

court grant *supersedeas* and stay execution of the writ for possession. The trial court denied the motion on April 26, 2023.

On April 27, 2023, Insectarium filed a motion to strike entry of judgment, arguing that the judgment entered on March 8, 2023 was entered prematurely. On May 2, 2023, Insectarium filed an emergency motion to enjoin the writ of possession. On May 11, 2023, the court entered an order denying Insectarium's motion to enjoin execution of the writ of possession. That same day, the trial court entered an order denying the post-trial motions.

On May 30, 2023, the Sheriff of Philadelphia County enforced the writ of possession and ejected Insectarium from the Property. On that same date, Insectarium filed an application to stay any potential sale of the Property. On June 2, 2023, the Estate filed a *praecipe* for a writ of execution initiating a sheriff's sale of the Property to satisfy the judgment. On June 22, 2023, this Court issued an order temporarily granting the application for stay, directing Insectarium to *praecipe* for entry of final judgment, and directing the parties to show cause why the April 12, 2023 *praecipe* for writ of possession and the June 2, 2023 *praecipe* for writ of execution should not be vacated as legal nullities where no final judgment had been entered because the judgment entered on March 8, 2023 at the time of the verdict was a legal nullity (***see*** FN 1, ***supra***). As previously mentioned, Insectarium filed a *praecipe* for entry of final judgment on June 23, 2023.

This Court issued another rule to show cause on August 10, 2023, ordering the parties to show cause why the appeal should not be quashed as taken from an order that is a legal nullity due to the bankruptcy stay or, alternatively, as to why the Order entering both a money judgment and an award of immediate possession should not be vacated. On October 6, 2023, this Court discharged both the June 22, 2023 and August 10, 2023 show cause orders and lifted the temporary stay of any sale of the Property. In doing so, this Court noted that although a writ of possession is not the proper procedural mechanism to execute on a judgment in mortgage foreclosure, here, Insectarium contractually agreed to relinquish possession upon default and does not argue that this contractual provision is somehow invalid.

We further note that the post-trial motions, as well as the initial notice of appeal filed March 18, 2023, were filed during the bankruptcy stay in this matter. A bankruptcy stay acts to stay any "actions that were originally brought against the debtor, regardless of whether the debtor is the appellant or appellee." ***DiDio v. Philadelphia Asbestos Corp.***, 642 A.2d 1088, 1091

*(Footnote Continued Next Page)*

on May 12, 2023, prior to judgment being entered on the verdict. In compliance with the trial court's order, Insectarium filed its concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b) on June 6, 2023.[8] As explained *supra*, Insectarium filed a *praecipe* for final judgment on June 23, 2023, and Insectarium's appeal relates forward to this date.[9]

Insectarium raises the following issues for our review:

> 1. Other than as specified by the recorded mortgage, is the interest in a property of a third party not a party to the

_____

(Pa.Super. 1994). **See also Citizens Bank of Pennsylvania v. Myers**, 872 A.2d 827, 833 (Pa.Super. 2005) (stating: "If an action was originally brought against a debtor, an appeal initiated by the debtor must be stayed as such an appeal comes within the scope of § 362"). Despite this, Insectarium did not refile its post-trial motion after the bankruptcy stay was lifted, and the trial court ultimately denied post-trial relief on the merits once the stay was lifted. Under these circumstances and in the interest of judicial economy, we will consider the court to have properly considered and disposed of the post-trial motions.

[8] Insectarium's Rule 1925(b) statement is anything but concise, as it is 23 pages long. In addition to those 23 pages, Insectarium appends three lengthy exhibits to its statement. In its opinion, the trial court attempted to address the issues presented in the headings throughout the statement. "Our law makes it clear that Pa.R.A.P. 1925(b) is not satisfied by simply filing any statement. Rather, the statement must be 'concise' and coherent as to permit the trial court to understand the specific issues being raised on appeal." **Tucker v. R.M. Tours**, 939 A.2d 343, 346 (Pa.Super. 2007), *aff'd*, 602 Pa. 147, 977 A.2d 1170 (2009). "[T]his type of extravagant 1925(b) statement makes it all but impossible for the trial court to provide a comprehensive analysis of the issues." **Id.** (citation omitted). Although we could deem Insectarium's issues waived for noncompliance with Rule 1925(b), because the trial court was generally able to address the claims presented, we decline to deem all of Insectarium's issues waived on this ground.

[9] **See** Pa.R.A.P. 905(a) (stating notice of appeal filed after announcement of determination but before entry of appealable order shall be treated as filed after such entry and on day thereof).

mortgage bound by the provisions of unrecorded verbal modifications to the recorded document?

2. Does an unrecorded verbal modification to a mortgage satisfy the requirements of the statute of frauds in the Commonwealth of Pennsylvania?

3. Do payments that never reduce interest accrued, let alone principal, satisfy the "promise to pay" requirement of the acknowledgment doctrine?

4. Do Restatement of Contracts 2d §§ 203 and 206 reflect the law in the Commonwealth of Pennsylvania?

5. Does the Pennsylvania law of the case doctrine govern interpretation of the ruling of a federal judge?

6. Under what circumstances does the law of the case doctrine not control a judge of coequal jurisdiction in the same case?

7. If evidence that it is alleged would undermine the credibility of a witness is not, after objection, allowed because it is declared to be irrelevant, is a party due a retrial when the court's finding relies heavily on the credibility of said witness?

8. Is laches available given the particular facts of this case?

(Insectarium's Brief at 9-12) (unnecessary capitalization omitted).[10]

In its first and second issues, Insectarium argues that the trial court erred when it found that the 1989 mortgage executed by Milton Rubin and Kanya, and the oral modifications thereto, were valid and complied with the

---

[10] Although Insectarium lists eight questions presented, its brief includes discussion of nine issues, which roughly align with the questions presented. The numbering discrepancy appears to stem from Insectarium splitting issue six into two separate headings in the discussion portion of the brief.

contractual requirements under Pennsylvania law.  Insectarium asserts that oral modifications to the mortgage violated the statute of frauds and were therefore invalid, leaving only the original 1989 mortgage burdening the Property.  Insectarium claims that Kanya might be responsible for satisfaction of the mortgage as modified but insists that its responsibilities are subject only to the requirements of the 1989 mortgage.  We disagree with Insectarium that any relief is due.

As a preliminary matter, we observe that the doctrine of *res judicata* serves to preclude litigation of claims for which final judgment on the merits has previously been entered.  Specifically:

> *Res judicata*, or claim preclusion, prohibits parties involved in prior, concluded litigation from subsequently asserting claims in a later action that were raised, or could have been raised, in the previous adjudication.  The doctrine of *res judicata* developed to shield parties from the burden of re-litigating a claim with the same parties, or a party in privity with an original litigant, and to protect the judiciary from the corresponding inefficiency and confusion that re-litigation of a claim would breed.

***Wilkes ex rel. Mason v. Phoenix Home Life Mut. Ins. Co.***, 587 Pa. 590, 607, 902 A.2d 366, 376 (2006) (citations omitted).  ***See also Travelers Indem. Co. v. Bailey***, 557 U.S. 137, 152, 129 S.Ct. 2195, 2205, 174 L.Ed.2d 99 (2009) (holding that bankruptcy court's orders, once final, became *res judicata* to parties).

Relatedly, "[w]hile *res judicata* … [applies] to bar relitigation of claims or issues in a subsequent action that were subject to a final judgment in a

prior action, the law of the case doctrine exists to prevent a party from relitigating claims or issues that have been resolved previously within the same action, either in a prior appeal or by a judge of coordinate jurisdiction." **Pollock v. National Football League**, 171 A.3d 773, 781 (Pa.Super. 2017), *appeal denied*, 645 Pa. 555, 181 A.3d 1074 (2018). **See also Zane v. Friends Hosp.**, 575 Pa. 236, 243 n.6, 836 A.2d 25, 29 n.6 (2003) (stating: "Among rules that comprise the law of the case doctrine are that: (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court").

Instantly, on appeal from the first trial in this matter, this Court explained that "a bankruptcy court's confirmation order that is final and no longer subject to appeal becomes *res judicata* to the parties and those in privity with them. The *res judicata* effect of a confirmation order bars litigation of claims that were or could have been raised in a prior action." **Rubin, supra** at 11 (citing **Travelers, supra**). Thus, this Court held that the trial court "was not free to disregard the bankruptcy court's confirmation as erroneous, because the confirmation order was entitled to full faith and credit, and the

plan established and acknowledged that a 'contract' existed between Kanya and the [E]state that was binding under the doctrine of *res judicata*." ***Id.*** at 13. Consequently, this Court held that "the [b]ankruptcy [c]ourt's confirmation of Kanya's reorganization plan created a binding contract between Kanya and the [E]state as of the date of confirmation, July 1, 2011." ***Id.***

Under both doctrines of *res judicata* based on the bankruptcy court's order, and the law of the case based on this Court's prior decision, we are bound to accept that a binding contract existed between Kanya and the Estate as of July 1, 2011. ***See Wilkes, supra***; ***Pollock, supra***. Pursuant to this binding contract confirmed by the bankruptcy court, "(1) the [E]state held a mortgage on the Property secured by a lien of $350,000.00, (2) the [E]state must be paid in accordance with this 'contract,' and (3) Kanya would pay arrearages of over $35,000.00 to the [E]state." ***Rubin, supra*** at 11.[11] Insectarium cannot now attempt to relitigate the validity of the mortgage under the statute of frauds, as any claims concerning earlier errors in failing

_____

[11] Insectarium took possession of the Property via quitclaim deed, and therefore it stands in the shoes of Kanya and assumes the obligation of any liens or encumbrances. ***Id.*** at 17 (citing ***Levitt v. Patrick***, 976 A.2d 581, 591 (Pa.Super. 2009) (explaining that when property subject to mortgage is transferred without payment of mortgage, property in hands of transferee continues to be security for performance of obligation, and for any default mortgagee may seize and sell property in hands of transferee)). Therefore, the contract for Kanya to pay a mortgage of $350,000.00 as well as arrearages of $35,463.00 in equal monthly payments of $1,000.00, extended to Insectarium when Insectarium received the Property.

to record a modification to the mortgage are barred by the doctrines of *res judicata* and the law of the case. **See Wilkes, supra**; **Pollock, supra**.[12]  For all of these reasons, Insectarium's first and second issues merit no relief.

In its third issue, Insectarium argues that the trial court erred when it found that the foreclosure action was not barred by the statute of limitations. Insectarium reiterates an argument made by the trial court following the original trial explaining that Kanya did not acknowledge the debt or offer an

_____

[12] As this Court noted, Insectarium was free to raise upon remand issues such as the material terms of the contract (*i.e.*, the interest rate), or issues concerning material terms of the lost note not already reflected in the mortgage. **Rubin, supra** at 15-16.  However, as the trial court noted, Insectarium did not present any evidence at the new trial concerning specific terms of the mortgage contract. (Trial Court Opinion at 9).

Moreover, we note that the statute of frauds "generally bars the introduction of evidence of an oral agreement modifying a deed which on its face transfers land in fee simple."  **Kadel v. McMonigle**, 624 A.2d 1059, 1061 (Pa.Super. 1993), *appeal denied*, 539 Pa. 652, 651 A.2d 539 (1994).  This Court has explained that the party against whom enforcement of an oral contract is sought may waive operation of the statute of frauds and does so "where the party fails to raise the statute in pleadings; or affirms the oral contract; or admits its existence in pleadings or testimony; even by inadvertence." **Target Sportswear, Inc. v. Clearfield Found.**, 474 A.2d 1142, 1150 (Pa.Super. 1984) (citations omitted).

Here, neither party to the mortgage agreement is challenging the oral modification, rather such challenge is being used by Insectarium in an attempt to invalidate an otherwise valid mortgage.  Nevertheless, "[t]he [s]tatute of [f]rauds does not void those oral contracts relating to land which fail to comply with the [s]tatute's formal requirements.  It is to be used as a shield and not as a sword, as it was designed to prevent frauds, not to encourage them." **Empire Properties, Inc. v. Equireal, Inc.**, 674 A.2d 297, 302 (Pa.Super. 1996) (quoting **Fannin v. Cratty**, 480 A.2d 1056, 1059 (Pa.Super. 1984)). Thus, we agree with the trial court that Insectarium would not be entitled to relief on these issues in any event.

appropriate promise to pay the debt, sufficient to toll the statute of limitations. We disagree with Insectarium's assertions.

"The application of the statute of limitations to an alleged cause of action is a matter of law to be determined by the court." **Valley Nat'l Bank v. Marchiano**, 221 A.3d 1220, 1222 (Pa.Super. 2019). This Court has already decided that the relevant statute of limitations in this case is Pennsylvania's four-year statute of limitations. **See Rubin, supra** at 17 (explaining that Pennsylvania's statute of limitations is governing law, even though some of conduct pertaining to this case such as Kanya's bankruptcy, took place in Florida). **See also** 42 Pa.C.S.A. § 5525(a)(7). "The statute of limitations is an affirmative defense, and it is waivable." **Driscoll v. Arena**, 213 A.3d 253, 257 (Pa.Super. 2019).

This Court has explained the acknowledgement doctrine as follows:

> Pursuant to the "acknowledgement doctrine," a statute of limitations may be tolled or its bar removed by a promise to pay the debt.
>
> A clear, distinct and unequivocal acknowledgement of a debt as an existing obligation, such as is consistent with a promise to pay, is sufficient to toll the statute. There must, however, be no uncertainty either in the acknowledgement or in the identification of the debt; and the acknowledgement must be plainly referable to the very debt upon which the action is based; and also must be consistent with a promise to pay on demand and not accompanied by other expressions indicating a mere willingness to pay at a future time. …

**K.A.R. v. T.G.L.**, 107 A.3d 770, 781–82 (Pa.Super. 2014) (citation omitted).

Instantly, this Court explained that upon remand, if Insectarium raised

the affirmative defense of the statute of limitations, it would bear the burden of proof at trial. **See Rubin, supra** at 16 (citing Pa.R.C.P. 1030). This Court further explained that the Estate, upon remand, "may respond to this defense with evidence such as whether the statute was tolled by a promise to pay the debt or part payment of the debt." **Id.** at 17. This Court continued that "the statute of limitations could not have begun to run earlier than the date of plan confirmation [July 1, 2011], thus rendering the statute of limitations a post-confirmation defense." **Id.** at 18.

Here, Insectarium's claims that the acknowledgment doctrine did not toll the statute of limitations reiterate arguments made prior to the first appeal in this case and concern events that occurred **pre**-confirmation of Kanya's reorganization plan. Upon remand, Insectarium was entitled to raise a statute of limitations defense by addressing "when or if a default occurred **after** July 1, 2011, and thus whether or when the statute of limitations began to run[.]" **Id.** at 14 (emphasis added). Nevertheless, at the new trial, Insectarium did not introduce any evidence to support a statute of limitations defense. Rather, the evidence adduced at trial through Kanya's testimony established that default occurred in January 2017 when Kanya failed to continue making payments on the mortgage. (**See** N.T. Trial, 11/28/22, at 101-02). Additionally, Ms. Iacona confirmed that the mortgage was in default commencing in January 2017. (**Id.** at 159). Insectarium did not introduce any evidence disputing the testimony of Kanya or Ms. Iacona, and it did not

introduce any evidence that default occurred prior to January 2017. As the Estate filed a notice of default in May 2017, and filed suit in this case in August 2017, Insectarium failed to prove applicability of the statute of limitations defense. *See* 42 Pa.C.S.A. § 5525(a)(7). Insectarium's third issue is meritless.

In its fourth issue, Insectarium argues that the trial court misinterpreted the terms of the 1989 mortgage, and that based on the language of the original 1989 mortgage, and given the interest accruing and the payments made, the 1989 mortgage had been satisfied and was no longer applicable. Alternatively, Insectarium claims that the July 1, 2011 bankruptcy court order set forth an amount due on the mortgage of only $35,463.00, and argues that Kanya satisfied that amount through his payments up until December 2016. We disagree.

To succeed in a mortgage foreclosure action, a mortgagee must prove that there existed a mortgage in a specific amount and at a specific amount of interest, and the mortgagor defaulted on the payments due under the mortgage. *Cunningham v. McWilliams*, 714 A.2d 1054, 1057 (Pa.Super. 1998), *appeal denied*, 557 Pa. 653, 734 A.2d 861 (1999). Under Pennsylvania law, "satisfaction of a mortgage occurs when all sums due and owing are tendered to the mortgagee." *O'Donoghue v. Laurel Sav. Ass'n*, 556 Pa. 349, 355, 728 A.2d 914, 916-17 (1999).

In the instant case, the trial court explained that Insectarium presented

only argument at the trial upon remand but did not present any evidence to support the claim that the mortgage had been satisfied. (Trial Court Opinion at 11-12). As the court stated:

> [The Estate's counsel] put on Lauren Iacona who testified that … Kanya owes [the Estate] the mortgage and other fees in the amount of $9[2]7,851.08. [N.T. Trial, 11/28/22,] at 145, 155. Moreover … Kanya, [a] party to the agreement, testified that he would make payments when he could; what he missed was put on the back end of what was owed, but he stopped paying [the Estate] in December of 2016. Further, [Steven Rubin on behalf of the Estate], testified that the agreement that he had with … Kanya, based on the agreement that … Kanya had with [Milton Rubin], was in effect until December 2016 when … Kanya stopped making payments. *Id.* at 174-175. Moreover, it was not until … Kanya alleged to him that he was ousted from Insectarium that … Kanya told him that he would not be able to keep making payments. *Id.* at 175. It is clear through the testimony of both [Steven Rubin] and … Kanya that the debt owed to [the Estate] is still outstanding. Defense Counsel consistently makes argument in different fashions that the mortgage has been paid but has provided no evidence to that effect.

(Trial Court Opinion at 12).

The record supports the trial court's finding that Insectarium did not introduce any evidence at the trial on remand that Kanya made any principal payments to the Estate following the July 1, 2011 bankruptcy court order. As discussed, we are bound by principles of *res judicata* to this Court's interpretation of the July 1, 2011 bankruptcy order, which set forth the amount due under the mortgage. ***See Wilkes ex rel. Mason, supra***. Contrary to Insectarium's insistence, that amount due constituted the $350,000.00 principal amount, interest, and **arrearages** in the amount of

$35,463.00. **See Rubin, supra** at 15. Because the evidence introduced at trial established that Kanya had not paid all sums due and owing, the trial court did not err when it declined to accept Insectarium's bald assertions that the mortgage had been satisfied. **See O'Donoghue, supra**. Thus, Insectarium's fourth issue does not merit relief.

In its fifth and sixth issues,[13] Insectarium claims that the trial court erred when it made several findings of fact that appeared to be inconsistent with findings made in the original 2019 trial. Specifically, Insectarium argues that the trial court upon remand ignored the findings of the 2019 trial court that Kanya owed only $35,000.00 on the mortgage. We disagree that relief is due.

As discussed above, this Court's prior disposition made clear that the trial upon remand would not be a trial *de novo* on all issues. **See Rubin, supra** at 15. Instead, this Court directed that "[c]onfirmation of the [bankruptcy] plan requires the trial court to find, without trial *de novo*, that a contract existed between Kanya and Rubin's estate as of July 1, 2011, the date of plan confirmation, for Kanya to pay a mortgage of $350,000.00 as well as arrearages of $35,463.00 in equal monthly payments of $1,000.00." **Id.** Thus, contrary to Insectarium's assertions, the trial court upon remand was

_____

[13] As previously mentioned, Insectarium dissects its sixth issue into two argument sections in the body of its brief. These argument sections simply refer to the argument set forth in its fifth issue. Therefore, to the extent Insectarium intended to raise any additional claims in its sixth issue, we deem such claims waived for lack of development. **See** Pa.R.A.P. 2119(a) (discussing required content for argument section of brief).

not bound by its original findings concerning the amount of the mortgage Kanya owed but was bound by this Court's directives on remand. *See Zane, supra* (stating "upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter"). Thus, issues five and six merit no relief.

In its seventh issue, Insectarium argues that the trial court erred when the court did not permit its counsel to respond to statements made by Kanya concerning his unfair treatment by Insectarium. However, aside from referencing an attachment to Insectarium's post-trial motion, Insectarium has not adequately developed this argument with citation to and discussion of any pertinent authority. *See* Pa.R.A.P. 2119(a). Consequently, Insectarium's seventh issue on appeal is waived. *See In re Est. of Whitley*, 50 A.3d 203, 209 (Pa.Super. 2012) (stating: "Failure to cite relevant legal authority constitutes waiver of the claim on appeal") (citation omitted).

In its final issue, Insectarium claims that the trial court erred when it did not find that the defense of laches barred prosecution of the mortgage foreclosure action. Specifically, Insectarium claims that because the Estate made no attempt to foreclose after Kanya failed to make a balloon payment under the mortgage in 1994, the doctrine of laches should bar the Estate from pursuing a foreclosure action at this point. We disagree.

The doctrine of laches is "an equitable bar to the prosecution of stale claims and is the practical application of the maxim that 'those who sleep on

their rights must awaken to the consequence that they have disappeared.'"

***Kern v. Kern***, 892 A.2d 1, 9 (Pa.Super. 2005) (quoting ***Jackson v. Thomson***, 203 Pa. 622, 53 A. 506, 506 (1902)). However, this Court has held that laches is not a proper defense to a mortgage foreclosure action, an action at law. ***See Leedom v. Spano***, 647 A.2d 221, 228 (Pa.Super. 1994). ***See also Levitt, supra*** at 590 n.4. Thus, Insectarium is not entitled to relief on its final claim. Accordingly, we affirm.[14]

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/11/2024

---

[14] In addition to the unavailability of laches as a defense, Insectarium again appears to disregard this Court's specific holding that "the statute of limitations on the Estate's foreclosure action had to have begun running after July 1, 2011." ***Rubin, supra*** at 13. Insectarium makes no argument concerning the applicability of the doctrine of laches after this date.